## ROBERT H. PEERY v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

October 31, 1913.

Nos. 18,150—(37).

**Federal Employer's Liability Act — evidence.**

> In an action for personal injuries, based upon the Federal Employer's Liability Act, it is
>
> *Held*, that on the facts stated in the opinion plaintiff, an employee of defendant, an interstate carrier of freight and passengers, was, at the time of his injury, engaged in interstate commerce, and entitled to the benefits of the Federal statute.

Action in the district court for Ramsey county to recover $25,000 for personal injury received while in the employ of defendant. The answer denied that the injury was caused by the negligence of de-

1 Reported in 143 N. W. 724.

fendant or its servants other than plaintiff, and alleged that the accident was caused or contributed to by his negligence. The case was tried before Brill, J., who granted defendant's motion for a directed verdict. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*Samuel A. Anderson* and *A. F. Storey,* for appellant.

*Butler & Mitchell,* for respondent.

BROWN, C. J.

The facts in the case are in substance as follows:

Defendant is a railroad corporation and operates a line of road extending into and through Kentucky, Tennessee and other states, and as such was at the time here in question engaged in the interstate carriage of passengers and freight for hire. Among the various lines so operated one extended from Paducah, Kentucky, in a southerly direction into and through the state of Tennessee, over and upon which it transacted a general interstate and intrastate transportation business. Plaintiff was in its employ as a conductor of one of its freight trains operated on this line. Plaintiff's run was between Paducah and Fulton, both points being in the state of Kentucky, Paducah on the north and Fulton on the south boundary of the state. The run is termed in the record as a "turn around run," that is, plaintiff and his crew would take a train from Paducah to Fulton, a distance of about 45 miles, and immediately return to Paducah the same day, repeating the operation from day to day. On the return trip the train would be composed of such cars as were at Fulton ready to be taken north, or, if there were no such cars on a particular day, the engine and caboose would alone compose the train on the return trip. Paducah was the terminal point of this crew. The trains so in charge of plaintiff were almost wholly composed of interstate shipments; freight consigned to points in Tennessee and in other southern states on the south-bound trip, and consignments to points in the northern states on his return trip, and comparatively speaking, there was very little local traffic. The trains at Fulton were taken to their destination by other train crews, and by them brought to that point from the south and taken on north by plaintiff and his

crew. This had been the general scope and character of plaintiff's employment for several years prior to the accident complained of, and was such at that time.

On the particular day he had taken an interstate train of cars to Fulton, and was on the return trip when injured. It happened that there were no loaded cars to be taken north, and he was directed to couple onto some flat cars upon which was loaded a pile driver, owned by the company, and sidetracked them at an intermediate point. There was also a partially disabled locomotive in the Fulton yards which he was required to take into the train and to Paducah for repairs. With his train so composed plaintiff proceeded on the return to Paducah. The pile-driving outfit was left at the point directed, namely, Mayville, and from that point the train was composed of the regular locomotive, the disabled locomotive and the caboose. A freight train followed plaintiff's train, and was directed to run about 10 minutes behind. When about 10 miles from the station where the pile driver was left, the second train collided with plaintiff's train, on a curve in the road, striking the caboose. in which plaintiff was riding at the time with great violence, and seriously injuring his person.

In this action to recover for his injuries the complaint charges that the collision of the trains was due to the negligence of defendants, and facts bringing the case within the Federal Employer's Liability Act; there was an attempt also to charge liability under the common law of Kentucky, the state wherein the injury occurred. At the trial below the court ruled that plaintiff was not engaged in interstate commerce at the time of his injury, and that he could not recover under the Federal act. The court also held the complaint insufficient to support evidence of the common law of Kentucky, denied a request to amend the complaint, and directed a verdict for defendant at the close of plaintiff's case. Plaintiff appealed from an order denying a new trial.

The result of our consideration of the record is that plaintiff was at the time of his injury engaged in interstate commerce, and entitled to the protection of the Federal Employer's Liability Act,—at least that the question should have been submitted to the jury,—

and it becomes unnecessary to consider the question of the liability of defendant under the common law of Kentucky. Since liability exists under the Federal law the state law disappears; the Federal statute controls the case. The opinion is therefore limited accordingly.

Upon all questions involving the construction of the Federal statute and its application to particular facts, we look to and are controlled by the decisions of the Federal courts, for in actions under that statute we are applying the Federal law, enacted and interpreted by higher authority. At the time of the trial in the court below, no decision of the Federal supreme court had been rendered which could be said to control the case at bar. The Federal circuit courts were in direct conflict in the application of the statute. Some of those courts holding, on facts analogous to those here presented, that the injured employee was not engaged in interstate commerce and could not recover. A strict rule of construction was applied, for the evident purpose of avoiding an intermingling of interstate and intrastate employments. On the other hand some of those courts had applied a more liberal view of the statute, and upon facts somewhat similar to those here presented, held the employment interstate and allowed a recovery. The trial court was justified in following the rule of nonliability laid down in some of the cases referred to, for the view taken was probably in accord with the majority of the circuit court decisions. Since the trial of the action, however, the question, so far as it involves facts like those in the case at bar, would seem to have been settled beyond serious controversy by the Supreme Court, in Pederson v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, and St. Louis, S. F. & T. Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129. In the first case cited the court, speaking through Mr. Justice Van Devanter [at page 150] stated the facts substantially as follows:

Defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and plaintiff was an iron worker employed by the company in the alteration and repair of some of its bridges and tracks near Hoboken, New Jersey. On the afternoon of his injury the plaintiff and another em-

ployee, acting under the direction of their foreman, were carrying from a tool car to a bridge some rivets and bolts which were to be used by them that night or early the next morning in repairing that bridge. They could reach the bridge only by passing over a temporary structure used by defendant. Both bridges were being used by the company in both interstate and intrastate commerce. While plaintiff was carrying the sack of bolts over the temporary bridge, he was struck and injured by an intrastate passenger train, of the approach of which the engineer failed to give the usual warning. On these facts the court held that the injured employee was engaged in interstate commerce within the meaning of the statute and his right of recovery was sustained. The court took a substantial view of the question and in effect held that if the work of an employee when injured was not wholly independent of interstate commerce, but so clearly connected therewith as to be part thereof, the statute applies.

In the second case cited the plaintiff was a yard clerk, with the duty of examining incoming and outgoing trains, and making a record of the cars in each. His duties related to both interstate and intrastate traffic, and on the day of his injury was on his way through the yard to inspect an incoming train, when he was struck by a switch engine and killed. He was performing no duty at the time, but was proceeding through the yard to inspect the incoming train. It was held that he was an employee engaged in interstate commerce within the meaning of the statute.

In the Pederson case the court cited with approval Zikos v. Oregon, R. & N. Co. (C. C.) 179 Fed. 893, where a section hand was held to come within the statute, though the company was both an interstate and intrastate carrier; Darr v. Baltimore & O. R. Co. (D. C.) 197 Fed. 665, applying the statute to a mechanic while repairing an engine used in interstate work; Northern Pacific Ry. Co. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237, where the statute was applied to an employee engaged in repairing a refrigerator car used in both classes of traffic, and Lamphere v. Oregon, R. & N. Co. 196 Fed. 336, 116 C. C. A. 156. In that case, which is analogous in its facts to the case at bar, the plaintiff was a locomotive fireman and was directed by his superior to report to the station for the purpose of

proceeding on a passenger train to a distant point on the line and there take charge of firing an engine of an interstate freight train, which was held under the statute limiting the hours of employment of railroad employees. He started to obey his orders and was on his way to the station when he was struck and killed by a passing train. The statute was held applicable to his situation. He was not at the time of his death engaged in any employment whatever, yet the court held him entitled to the benefit of the statute. The decisions in the Pederson, Seale and Lamphere cases leave no fair doubt of the intention of the Supreme Court to give a liberal and substantial construction to the statute, as well as a broad application thereof to particular facts.

That the case at bar comes within the rule of those cited seems clear. Plaintiff was, and had been for several years, engaged in operating, as conductor, an interstate freight train. His daily employment was to take such train south on defendant's line of road, returning the same day to Paducah. His employment at the time of his injury was not independent of interstate commerce, and the case comes within the rule announced by the court in the Pederson case. Plaintiff's daily routine was the same and it related almost wholly to interstate commerce, and intrastate work was a mere incident to his general employment. We are clear, in view of the decisions referred to, that the fact that the pile driver was attached to the train on the return trip on this occasion did not change plaintiff's relation to the company, or the character of his employment. In other words the mere fact that the pile driver was taken into the train and set out at an intermediate point, prior to the collision, did not make plaintiff exclusively an intrastate employee, if it may be said that the act of moving the pile driver, property of defendant, was commerce at all. Plaintiff's general employment was in conducting a train engaged in interstate commerce, and he was not injured while engaged in some work purely of intrastate character.

Order reversed and new trial granted.