# Alabama Great Southern Ry. Co. v. Skotzy.

### Injury to Servant.

(Decided February 3, 1916. Rehearing denied March 23, 1916. 71 South. 335.)

1. **Master and Servant; Injury to Servant; Assumption of Risk.**—The defense of assumed risk cannot be availed of under the general issue, but must be made the subject matter of a special plea.

2. **Commerce; Interstate; Federal Liability Act.**—Where the plaintiff was engaged as a railroad fireman in a crew making up interstate trains, and was injured during a temporary lull in the work in which he was engaged, he was engaged in interstate commerce when injured, and his case was properly brought under the Federal Employer's Liability Act.

3. **Master and Servant; Injury to Servant; Jury Question.**—Evidence that while plaintiff, a fireman, stood on an adjacent truck in order to work, another crew switched some cars with no one controlling them, and no warning signal into the cars on that track which ran over plaintiff and injured him, and that the switching foreman could have seen plantiff or his crew, was sufficient to warrant a submisson to the jury of the question of negligence.

4. **Same; Contributory Negligence.**—Where there was nothing to indicate that the cars on the track on which plaintiff was standing when injured, would be moved during the time he was there engaged, evidence that cars ran over plaintiff who was standing on a track adjacent to the engine on which he was working to straighten his flue auger between the wheels of his engine, was sufficient to warrant a submission to the jury of the question of contributory negligence.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by A. K. Skotszy against the Alabama Great Southern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts are sufficiently stated in the opinion. The following are the charges referred to: (5) Unless you are reasonably

· satisfied from all the evidence in this case that it was the duty · of the crew of engine No. 114 to give notice of the fact that they proposed or intended or were about to kick a car or cars on the track on which plaintiff was standing, then you must find a verdict for defendant. ·  ·  ·  ·

(9) If you believe the evidence in this case, the court charges you that plaintiff is guilty of contributory negligence.

A. G. & E. D. SMITH, for appellant. HARSH, HARSH & HARSH, for appellee.

GARDNER, J.— (1) Appellee recovered a judgment against appellant for injuries received while in its employ as fireman on one of its engines in the yards of said railroad in Birmingham. The complaint contained but one count, declaring for simple negligence, and was under the federal Employers' Liability Act. The cause proceeded to trial upon the plea of the general issue and the plea of contributory negligence. Much stress is laid in argument for appellant upon the question of assumption of risk, and authorities of other jurisdictions are cited to the effect that such a defense need not be specially pleaded. There is no plea setting up that character of defense in this case. The question as to whether or not a special pleas is necessary was set at rest in this state by the following language found in *Foley v. Pioneer Mfg. Co.,* 144 Ala. 182, 40 South. 274: "Assumed risk, when set up as a defense, is subject-matter for a special plea. There is a well-defined distinction between assumption of risk and contributory negligence, still both of these defenses are in confession and avoidance of the plaintiff's action, and cannot be availed of under the general issue, but must be specially pleaded." ·  ·  ·

The holding in the *Foley Case* was reaffirmed in the more recent case of *Mobile Elec. Co. v. Sanges,* 169 Ala. 341, 53 South. 176 Ann. Cas. 1912B, 461. See, also, in this connection *King v. Woodward Iron Co.,* 177 Ala. 487, 59 South. 264.

(2) It is next insisted by counsel for appellant that the plaintiff is not shown under the evidence to have been engaged at the time of the injury in interstate commerce, and that therefore as the complaint was made under the federal Liability Act there was a fatal variance entitling the defendant to the affirmative charge. It may be seriously questioned that appellant is in position to raise this question on this appeal, for the reason that it ap-

pears from the record that the court in its oral charge to the jury stated that there was no dispute or controversy between the parties that defendant and the plaintiff were engaged in interstate commerce at the time of the injury, and that they need spend no time "on questions which both sides admit." No objection or exception was taken to this portion of the charge, which seems to have been repeated in substance. It would therefore appear that the trial was had upon that theory of the case.— *L. & N. R. R. Co. v. Holland*, 173 Ala. 696, 55 South. 1001. Brushing aside this consideration (and without determining the same), we prefer to rest our conclusions upon the real merits of the question as presented by the evidence. As previously stated, the plaintiff was employed as a fireman on one of the engines— No. 117—of defendant's railroad. The crew of which he was a member was, at the time of the injury, "making up trains." Quoting from the plaintiff: "The crew and myself were using that engine for making up a train to go south, to go as far south as Meridian, Miss. * * * Yes, sir; these cars that were dropped down and run over me were being made up into a train to go to Meridian, Miss."

At the time of the injury the engine on which plaintiff was fireman was standing still, and the plaintiff was in the act of cleaning out the flues (a part of his duty) with the flue auger. The crew had stopped, temporarily, to go up to the yard office for some purpose not disclosed, and the evidence for plaintiff tends to show that he merely took advantage of this temporary lull in the work of making up the train to blow out the flues of his engine. This is further indicated by his testimony, where he says: "We were going to go back at making up the through train." The answer of the defendant to interrogatories propounded by the plaintiff shows that "engine No. 117 was standing still at the time the accident occurred, but had been handling or switching in the Birmingham yard cars loaded with interstate freight on the day plaintiff was injured." One Gladden, witness for defendant, and who was in charge of said engine No. 117, testified:

"All that day we were switching cars in the yard, * * * making up trains to go south, to go to Meridian, Miss. The other crew were switching cars in there to go south. * * * We were both switching in the same yard, making up trains, Meridian, Miss., trains."

[Alabama Great Southern Ry. Co. v. Skotzy.]

The evidence for plaintiff further tended to show that the cleaning out of flues was necessary to make the engine steam and do its proper work. There seems to be no insistence by appellant's counsel that defendant was not engaged in interstate commerce, but the argument is devoted to the proposition that the plaintiff was not so engaged at the time of his injury. In the case of *Pederson v. Del., Lack. & West. Ry.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, it was said: "Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?"

The plaintiff was engaged as a member of a crew at the time of the injury, making up a train to go to Meridian, Miss. A fair inference from the testimony as above indicated would be that there was a temporary lull while some of the crew went to the yard office for some purpose, and the work of making up the trains had not been completed. We deem a discussion of the cases cited by counsel for appellant unnecessary, as we think the principles which controlled the court in the case of *N. C. & St. L. v. Zachary*, 232 U. S. 248, 34 Sup. St. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, are conclusive in this case against the contention of appellant. See, also, the *Pederson, etc., Case, supra;* Roberts on Injuries to Interstate Employees, § 35, and cases there cited; *L. & N. R. R. Co. v. Carter*, 195 Ala. 382, 70 South. 655; *Pittsb., C., C. & St. L. Ry. v. Glinn*, 219 Fed. 148, 135 C. C. A. 46; *N., C. & St. L. Co. v. Banks*, 156 Ky. 609, 161 S. W. 554. We are of opinion that the case was properly brought within the influence of the federal Liability Act. There is nothing in the case of *L. C. v. Behrens*, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, cited by counsel for appellant, which in the least militates against the conclusion here reached. In that case the employee was engaged in moving cars from one part of the city to another, all of which were loaded with intrastate freight.

(3) It is next insisted that the defendant was entitled to the affirmative charge, for the reason that no negligence was shown on the part of any employee or servant of the defendant company.

It appears from the evidence that near to and parallel with the track on which plaintiff's engine was standing was another track, on which were two unconnected cars. Plaintiff insists that the engineer instructed him to clean out his flues, and that he got off his engine and found the flue auger was bent. He placed the auger between the driving wheels of the engine in order to strighten it, and in doing so placed himself on the parallel track where the idle cars were standing. The flue auger was of steel, about 12 feet long and 1 inch in diameter, and plaintiff being at one end of the auger for the purpose of straightening it, placed him on the opposite track. Plaintiff testified that straightening the auger in this way required only a minute or two, and that the accident "happened in that minute or two." While he was thus in the act of straightening the auger, the other crew, which was also engaged in switching cars to make up a south-bound train, ran some cars into the ones standing idle, and caused them to knock down and run over plaintiff and injure him. The cars thus dropped down were cut off from the control of the engine and turned loose. The witness Fuller, who was foreman of the switch engines and with the crew that cut off these cars, testified that he did not put any one, or cause any one to be, on these cars when they went down and bumped into the other cars. He said:

"I just threw them down by themselves. * * * Without anybody on them; they ran in that condition about 7 car lengths; it was a gradual down grade, going north. * * * When they left our engine * * * the train was going about three or four miles an hour. * * * They increased their speed until they struck the other cars. * * * It did not stop them. They are not supposed to stop, knock them on down in the clear; clear the switching lead. * * * On that occasion I turned those cars loose to bump against two standing cars, * * * with the knowledge that the two standing cars would not stop them, and that the standing cars would be bumped, and might run about as far as 20 car lengths, * * * without any control at all. * * * I knew that this engine Skotzy was fireman of was standing on the next track. * * * I knew that when I cut the cars off. * * * It was daylight there; I could see those cars. I was about 7 car lengths away from Skotzy's engine. A car length is about 36 feet. * * * I was about 252 feet away. * * * I could see everything perfectly plain. And I did look down to see."

The witness further testified that the two tracks were straight and close together, but stated that from where he stood he could not see down between the tracks to the engine. There was evidence tending to show that no signal or warning was given at the approach of these cars, and we are of the opinion that there was sufficient testimony from which the jury could infer that the witness Fuller could or did see plaintiff, or that at least he was looking ahead down the track and could have seen, and did see, the auger protruding from the engine and entirely across the space between the engine and in front of the standing cars.— *So. Ry. Co. v. Shelton,* 136 Ala. 191, 34 South. 194.

Much of the argument of appellant's counsel seemed to rest upon the theory that the defendant owed plaintiff no duty to keep a lookout or to give any signal of approach. The evidence for the plaintiff tends to show that in switching the cars the crew, to quote the witness, "is supposed to look out and see if anybody is on the track," and "it was a rule not to move cars without a signal." In *L. & N. R. R. Co. v. Thornton,* 117 Ala. 274, 23 South. 778, the following charges were held properly refused: "(8) I charge you that the brakeman on the car that ran over plaintiff was only required to keep such a lookout as a reasonably prudent man would have kept in performing the duties of a brakeman, and he was not required to keep a special lookout for persons lying on the track. (10) I charge you that it was not the duty of the brakeman on the car that ran over plaintiff to keep a lookout for human beings on the track in front of his car."

The facts in the *Thornton Case* bear some analogy to those here under consideration. Speaking to the ruling of the court in refusing charges 8 and 10, above quoted, the court said:

"This brakeman was, for the time, so to speak, the engineer of the descending car. He, and no other person had control over it, and that was his duty. It has been held that engineers, or persons in control of an engine or car, 'should always be on the lookout for obstructions (whether of persons or things), and, when discovered, no matter when or where, should use all the means within their power to escape the impending danger, or to avert the threatened injury; and less care than this is not due diligence.'—*S. & N. Ala. R. R. Co. v. Williams,* 65 Ala. 78. The rule of the company required each employee * * * to look out after, and be responsible for, his own safety, as well as to

exercise the utmost caution to avoid injury to his fellow servants, especially in the switching of cars, and in all movements of trains.' The injury to plaintiff occurred in the nighttime, in the switching yard of defendant in the city of Birmingham, which was interlaced with switch tracks. If true, as the charges postulate, that the brakeman was under no duty to keep a special lookout for persons on the track, yet, if a proper lookout for obstructions of any kind, which he was bound to keep, would have revealed a person on it, in a perilous condition, the duty would have arisen to save him if practicable. The charges were calculated to confuse and mislead the jury. The question of negligence or not, as averred in the complaint, was, under all the surrounding circumstances, one proper for the determination of the jury, under proper instructions."

We are of the opinion that the question of negligence was one for the jury.—*Randle v. B. R. & P. Co.*, 158 Ala. 532, 48 South. 114. An examination of the case of *Johnson v. N., C. & St. L. Ry.*, 177 Ala. 284, 58 South. 447, cited by counsel for appellant, discloses that there was no ruling by a majority of the court in that case that no negligence was shown.

Charge 5, requested by defendant, was properly refused. If not bad for other reasons, its refusal could be properly based upon the fact that it fails to take into consideration any duty on the part of the servants of the defendant to look out for obstructions on the track (*L. & N. R. R. Co. v. Thornton, supra*), or to give warning after the discovery of plaintiff's perilous situation.

(4) Charge 9 was also properly refused. It is misleading, in that it makes no reference to the fact that the negligence of the plaintiff must be such as proximately to contribute to his injury. It seems to be further incomplete in failing to instruct the jury as to the result of the finding in this particular case. We are further of the opinion that the contributory negligence of plaintiff was, under the evidence in this case, a question for the jury. There was evidence tending to show that in straightening the auger—which was a part of his duty—while the cars were standing disconnected on the opposite track, there was nothing to indicate that they would be struck or moved during "the minute or two" that he was so engaged. As to whether the conduct of the plaintiff in so placing himself in a dangerous position was such as to make him guilty of such negligence as proximately

[Central of Georgia Ry. Co. v. Mathis.]

contributed to his injury was a question properly submitted for the determination of the jury.

We have dealt with each of the questions presented by counsel for appellant, although we have not commented upon the several authorities of other jurisdictions cited by counsel in their brief, as we deem the case ruled by the decisions of our own court herein noted, and by those cited from the Supreme Court of the United States.

Finding no reversible error in the record, the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.