## Schaeffer, Administratrix, et al. v. Illinois Central Railroad Company, et al.

(Decided November 22, 1916.)

### Appeal from McCracken Circuit Court.

1. Master and Servant—Personal Injury to Servant—When Action Under Employers' Liability Act Will Lie.—To authorize the recovery, under the Federal Employers' Liability Act, of damages by an employe for an injury sustained through the negligence of a common carrier, it must be alleged and proved that the injury was suffered while the employe was engaged in interstate commerce. It is not sufficient that the carrier in whose service the injury is sustained is engaged in interstate commerce. The true test is, is the work or service, in performing which the employe is injured, a part of the interstate commerce in which the carrier is engaged?

2. Master and Servant—Personal Injury to Servant—Action Under Employers' Liability Act—Evidence.—In an action under the Federal Employers' Liability Act by the personal representative of a railroad employe, to recover of the railroad company damages for his death, alleged to have been caused by the negligence of a superior while such employe was engaged in unloading wrecked material from a car, a week following its removal to the depot yards from the place of the wreck, that it might be inspected and from such inspection determined how much, if any, of it could be repaired for future use; evidence of such facts and that more than a month later the particular trucks that fell upon and killed the dece-

dent were loaded on a car and billed to the railroad company's machine shops in another state, but which failed to show that they in fact left this state or were again put to use in interstate commerce; held, not sufficient to prove that the decedent at the time of receiving the injuries resulting in his death was engaged in interstate commerce, hence the action of the trial court in directing a verdict for the defendant was not error.

BRADSHAW & NICHOLS for appellants.

WHEELER & HUGHES, BLEWETT LEE and TRABUE, DOOLAN & COX for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below against the appellees, Illinois Central Railroad Company, and J. C. McCarthy, by the appellant, Mrs. T. E. Schaeffer, as administratrix of the estate of her deceased husband, T. E. Schaeffer, to recover damages for his death, which resulted from injuries to his person caused, as alleged in the petition, by the gross negligence of the appellee, railroad company and its servant, J. C. McCarthy, foreman of its wrecking crew and the decedent's superior in authority. On the trial and following the introduction of her evidence, appellant sustained a non-suit and, from the judgment entered upon the verdict directed by the court, she prosecutes this appeal.

The action was brought under the Federal Employers' Liability Act, it being alleged in the petition that the work in which the decedent was engaged at the time of receiving the injuries that caused his death was interstate commerce, and that he was survived by his widow, the appellant, and one child, Theodore B. Schaeffer, a boy ten years of age, both of whom were wholly dependent upon him for their support. Appellees' answer denied the negligence alleged in the petition or that the decedent was engaged in interstate commerce at the time of receiving his injuries, and pleaded assumption of risk on the part of the latter. The affirmative plea was controverted by reply.

The following brief statement of the facts will show the circumstances under which appellant's decedent sustained the injuries resulting in his death: About December 31, 1914, one of appellee's freight trains, while passing from Paducah over its line to Evansville, Indiana, was wrecked near Marion in this State, causing

the track to become obstructed. On the same day a wrecking crew, of which the decedent, T. E. Schaeffer, was a member, was ordered to go from the city of Paducah with a train known as a "wrecker," to the place of the accident, with directions to load the wrecked cars and parts thereof upon the wrecker and return them to Paducah, which they did. Upon their arrival at Paducah the cars loaded with the wrecked material were placed on a track in the appellee's railroad yards, where they remained until January 9, 1915, at which time the members of the wrecking crew, including the decedent, were ordered to unload the wrecked material from the cars on the side track. According to appellant's evidence, while thus unloading the cars the decedent and another of appellee's employes, under the direction of its foreman, J. C. McCarthy, took a pole, one end of which they placed against a car and held the other end where the wrecker could be moved up against it for the purpose of shoving the car further down the track that some car trucks then being unloaded might be placed upon the ground. At the time this direction was given the decedent and the other employe referred to, the wrecker was holding suspended from the end of the car a set of "Fox trucks" and when the movement of the wrecker and car took place certain hooks which were placed under the center plate of the Fox trucks slipped or turned loose, causing the trucks to fall on Schaeffer, producing the injuries of which he soon died. The trucks that fell upon him were placed to one side and nothing more done with them until February 18, 1915, at which time they seem to have been reloaded on a car with one other set of trucks and billed to Burnside, Illinois. It was shown by the testimony of certain of appellant's witnesses that the manner of unloading the wrecked material adopted and directed by appellee's foreman, McCarthy, was not the usual or a safe method of doing such work. Others of them, fewer in number, expressed the opinion, however, that the method of unloading was reasonably safe and the customary way of doing such work.

But conceding that the foreman was negligent in directing the method of unloading adopted, the question arises, did the evidence bring the case within the provisions of the Federal Employers' Liability Act? In other words, was the work in which the decedent was engaged, when the injuries causing his death were re-

ceived, interstate commerce? The trial court was of the
opinion that the work was not interstate commerce, for
which reason it peremptorily instructed the jury to re-
turn a verdict for the appellee. The pleadings seem
to make no issue as to the fact that the appellee rail-
road company is an interstate as well as intrastate pub-
lic carrier of freight and passengers and, therefore, en-
gaged in interstate commerce, but it does not follow
from this fact that the work in which the decedent was
engaged was interstate commerce. As held in Peder-
son v. D. L. & W. R. Co., 229 U. S. 146, the true test al-
ways is, is the work in question a part of the interstate
commerce in which the carrier is engaged?

The theory advanced by the appellant for the claim
that the decedent was engaged in interstate commerce
is, that while the wrecked material unloaded was assorted
and the larger part thereof carried to appellee's shops
in Paducah, certain other parts, including the trucks
that fell on the decedent, were on February 18, 1915,
loaded on a car and billed to Burnside, Illinois, to be
repaired for further use. The only other witness furnish-
ing any testimony on this point was E. A. Gourieaux,
an employe of appellee, Illinois Central Railroad Com-
pany, intrusted with the duty of keeping a record of
cars that were wrecked and of the disposition made of
all wrecked material. The most that was shown by the
testimony of this witness was that the trucks which fell
upon the decedent were, on the 18th of February, more
than a month after he was killed, put on a car and billed
to Burnside, Illinois, a suburb of Chicago, where the
Illinois Central Railroad Company has extensive repair
shops. But it was not made to appear by the testimony
of this witness that the trucks reached Burnside, were
repaired there, or that they were ever again put to use.
It does, however, appear from the testimony of the same
witness that the trucks and other wrecked material were
being unloaded from the car on the yard track at the
time of the accident to the decedent, for the purpose of
enabling other employes of the railroad company,
charged with that duty, to inspect them and determine
from such inspection whether they could be made of
further use, and if so, what use and where they should
be sent to be repaired for such use. In other words, it
is patent from the testimony of Gourieaux that it could
not have been known when the wrecked material was

unloaded whether the trucks which fell upon the decedent would go to the Burnside shops or the Paducah shops for repairs; if they ever did, in fact, reach Burnside it was more than a month after the decedent's death that those in authority decided they should be sent there, but whether to be repaired or put to further use the witness did not know.

It is the contention of appellant's counsel that the unloading of the wreckage in the Paducah yards from the cars to the ground for inspection and separation of the parts, on January 9, 1915, was but a preliminary step to an interstate shipment of the trucks which fell upon the decedent; whereas, the evidence as we have seen, only establishes the fact that the unloading of the cars was for the inspection and separation of the wrecked material; that it was not determined for more than a month later what disposition should be made thereof, and wholly fails to show that the trucks which fell upon the decedent were, in fact, shipped beyond the limits of this State. The contention is no more sustained by the facts than would be the insistence that an employe of a common carrier engages in interstate commerce when running or working on an engine used at the time exclusively in intrastate commerce, because the engine had been brought from another state before being submitted to his use, or might in the course of time be run into another state. Sight must not be lost of the fact that in order to bring the case within the provisions of the federal statute it must be shown that the work in which the decedent was engaged was a part of the interstate commerce in which the carrier was engaged. If the decedent had been engaged at the time of the accident in removing from the track at the point where the train was wrecked, the wrecked material that obstructed it, it might be said that as the clearing of the track was necessary because of its use for interstate commerce, the decedent in removing the debris from the track would be engaged in the work of interstate commerce.

In I. C. R. Co. v. Kelly, 167 Ky. 754, we held that where the employe of a common carrier engaged in interstate commerce, was injured through the negligence of a superior while loading on a car steel rails to be stored, which had previously been removed from the railroad track used in interstate commerce, because no

longer suitable for use therein, in performing such service was not engaged in interstate commerce. We further held in that case, however, that though the evidence did not bring the action within the provisions of the Federal Employers' Liability Act, under which it was instituted, it did conduce to establish the employe's right to recover under the law of the State, and that the trial court should have given him leave to amend his petition to conform to the law of the State and to the proof and upon the filing of such amendment submitted the case to the jury under instructions applying the law of the State. If, however, he refused to avail himself of the right to amend, the court in that event should have given a peremptory instruction directing a verdict for the railroad company.

In I. C. R. Co. v. Behren's Admr., 223 U. S. 473, it is declared that Congress intended by the provisions of the Employers' Liability Act of April 22, 1908, making every common carrier by railroad, while engaged in interstate commerce, liable in damages to any person, "suffering injury while he is employed by such carrier in such commerce," to confine its application to injuries occurring when the particular service in which the employe was engaged was a part of interstate commerce. In that case it was held that a fireman employed by an interstate railway carrier on a switch engine, who was killed while aiding in the work of moving several cars, all loaded with intrastate freight, between two points in the same city, was not employed in interstate commerce within the meaning of the Federal Employers' Liability Act, although, upon completion of that task the switching crew was to have gathered up and taken to other points several other cars as a step or link in both interstate and intrastate transportation.

In L. & N. R. Co. v. Parker's Admr., 165 Ky. 658, this question was fully considered and decided. We therein held that where a switching crew, at the time of an injury to a fireman on the switch engine, were engaged in switching an intrastate car from one part of the yard to another, but expected shortly to switch an interstate car from one part of the yard to another, and the switching of the intrastate car was done in order to enable the engine and crew to switch the interstate car upon another track, they were engaged in intra-

state and not interstate commerce. In the opinion it is said:

"The true test is what character of commerce was the employe engaged in at the time of his injury, and not whether he was engaged at the time in one kind of commerce as a preliminary to the engagemnt of another kind. Suppose at the time of Parker's injury there had been attached an interstate car to the engine, and it was being switched from one part of the yard to another with the preliminary purpose of removing an intrastate car from one part of the yard to another, would a contention that it was then engaged in intrastate commerce, merely because of the purpose in the near future to so engage, be considered for a moment?"

Can it, we may ask, with any pretense of reason be contended that where an employe of a common carrier is killed in unloading from a car in its yards wrecked material, a week before removed from the scene of the wreck, that it may be separated in parts for other employes to later inspect and determine what part of it, if any, shall be repaired for future use, that such employe was engaged in interstate commerce, because other employes, more than a month later, happened to decide that a particular part of the wrecked material, and the same which fell upon and killed the decedent, should be repaired for some sort of use in the carrier's business and even sent into another state for that purpose?

In our opinion the evidence contained in the record fails to show that the work appellant's decedent was performing when the injuries that caused his death were received, was a service in interstate commerce, hence the action of the trial court in peremptorily directing a verdict for the appellees was proper.

Judgment affirmed.