A. D. ELEY, Appellee, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellant.

CARRIERS: Interstate Commerce—When Employee so Engaged.
1    A railway employee, while *returning* with his train from work

in distributing ties along an interstate line for repairs thereon, is engaged in interstate commerce. (Act April 22, 1908, Ch. 149, 35 Stat. 65.)

**APPEAL AND ERROR:** Harmless Error—Application of Federal Rather than State Law. Harmless error results from submitting a cause under the Federal Employers' Liability Act, instead of under the state law, when the extent of recovery, in the case in question, is the same under either act.

**NEGLIGENCE:** Proximate Cause—Jury Question on Conflicting Evidence. A jury question on the issue of proximate cause is necessarily presented (a) by evidence which would clearly justify the jury in finding that the acts and omissions of the defendant were the proximate cause, and (b) by conflicting evidence as to whether the plaintiff's acts were such proximate cause. So held where the defendant was clearly negligent in not informing a train crew that a crippled engine was preceding them, while the evidence was in conflict on the question whether the conductor of the crippled train deliberately omitted to back-flag his train, or assumed that the brakeman had performed his duty to so flag.

**NEGLIGENCE:** Contributory Negligence—When Not a Defense. Principle recognized that contributory negligence on the part of an employee of a railway (while engaged in the operation of a railway) is not a defense. (Sec. 2071, Code Supp., 1913.)

**TRIAL:** Instructions—Objections and Exceptions—Failure to Except before Submission. Failure to except to instructions prior to submission to the jury waives error therein. And a naked statement in a motion for new trial that an assigned error "was not discovered" at the time of the trial is insufficient to then justify its consideration. (Sec. 3705-a, Code Supp., 1913, now repealed.

*Appeal from Wright District Court.*—R. M. WRIGHT, Judge.

MARCH 18, 1918.

REHEARING DENIED MAY 21, 1919.

ACTION for damages under the Federal Employers' Liability Act. Judgment for plaintiff. Defendant appeals.— *Affirmed.*

        *Carr, Carr & Evans,* and *Birdsall, McGrath & Archerd,*
for appellant.

        *J. W. Henneberry* and *Sylvester Flynn,* for appellee.

STEVENS, J.—Defendant, at the time of the accident
causing the injuries complained of, was engaged in oper-
ating a line of railway extending from Hayfield, Minneso-
ta, to Clarion, Iowa, and to other points.

1. CARRIERS: interstate commerce: when employee so engaged.

Plaintiff was employed as a conductor, and
on the day of the accident, was in charge of
a work train (known as Extra No. 130),
employed in distributing ties at various
points along the route between Clarion and Thornton, sta-
tions in Iowa on defendant's line, for use in repairing the
track. The injuries were received about 9:10 P. M., while
plaintiff was returning to Clarion with the train crew and
several section men who had assisted to unload the ties.
While standing on the track at Cornelia, the caboose was
run into by a regular freight train, known as No. 87, re-
sulting in the injuries suffered by plaintiff. The stop was
made on account of some defect in the engine, requiring the
use of grain doors as fuel to create sufficient steam to con-
tinue with the caboose and engine to Clarion. Further nec-
essary facts will be referred to in the course of the opinion.

        I. Plaintiff brought this action under the Federal Em-
ployers' Liability Act, and his right to maintain it is chal-
lenged by counsel for defendant, upon the ground that he
was not, at the time of the accident, engaged in interstate
commerce.

        He left Clarion in the morning, in charge of Extra No.
130, composed of an engine, caboose, and several cars load-
ed with ties, to be distributed at various places along the
track. Having finished unloading the ties at Thornton, in
obedience to orders from the chief dispatcher, plaintiff and
crew were returning to Clarion. The train at this time con-

sisted of the caboose and engine. The crew comprised the fireman, engineer, two brakemen, and plaintiff. Several of the section men who had assisted in unloading the ties were also riding in the caboose. Although counsel does not concede that, while plaintiff was in charge of the train unloading ties with which to repair the track used for interstate traffic, he was employed therein, it has quite generally been held that an employee engaged in delivering material therefor, or in repairing bridges or tracks used in interstate commerce is likewise so employed. An employee, while on his way to and from his work, if employed in interstate commerce, injured by the negligence of his employer, is entitled to prosecute his action for damages under the Federal Act. *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 (57 L. Ed. 1125) ; *Bravis v. Chicago, M. & St. P. R. Co.,* 133 C. C. A. 228, 229; *Law v. Illinois Cent. R. Co.,* 126 C. C. A. 27; *Philadelphia, B. & W. R. Co. v. McConnell,* 228 Fed. 263; *Tralich v. Chicago, M. & St. P. R. Co.,* 217 Fed. 675; *Coal & Coke R. Co. v. Deal,* 231 Fed. 604; *Zikos v. Oregon R. & N. Co.,* 179 Fed. 893; *Illinois Cent. R. Co. v. Rogers,* 221 Fed. 52; *Central R. Co. v. Colasurdo,* 192 Fed. 901; *Darr v. Baltimore & O. R. Co.,* 197 Fed. 665; *Louisville & N. R. Co. v. Walker's Admr.,* 162 Ky. 209 (172 S. W. 517) ; *Louisville & N. R. Co v. Williams' Admr.,* 175 Ky. 679 (194 S. W. 920) ; *Bumstead v. Missouri Pac. R. Co.,* 99 Kan. 589 (162 Pac. 347) ; *Southern Pac. Co. v. Industrial Acc. Comn.,* 174 Cal. 8 (161 Pac. 1139) ; *Chesapeake & O. R. Co. v. Kornhoff,* 167 Ky. 353 (180 S. W. 523) ; *Truesdell v. Chesapeake & O. R. Co.,* 159 Ky. 718 (169 S. W. 471) ; *Glunt v. Pennsylvania R. Co.,* 249 Pa. 522 (95 Atl. 109) ; *Schaeffer v. Illinois Cent. R. Co.,* 172 Ky. 337 (189 S. W. 237) ; *Holmberg v. Lake Shore & M. S. R. Co.,* 188 Mich. 605 (155 N. W. 504) ; *Clark v. Chicago G. W. R. Co.,* 170 Iowa 452; *Ross v. Sheldon,* 176 Iowa 618.

"The true test of employment in such commerce in the

sense intended is: Was the employee, at the time of the injury, engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177.

See, also, *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556; *McBain v. Northern Pac. R. Co.,* 52 Mont. 578 (160 Pac. 654); *Karras v. Chicago & N. W. R. Co.,* 165 Wis. 578 (162 N. W. 923); *Pedersen v. Delaware, L. & R. Co.,* supra.

Plaintiff, it is true, was not, at the instant he was injured, engaged in distributing ties along the defendant's track, but was in charge of the train and the instrumentalities employed by him immediately preceding the time when the return trip was entered upon, and was proceeding therewith to the defendant's shops at Clarion. Under the holding of the cases cited, plaintiff and defendant were, at the time of the injury, engaged in work so closely related to interstate commerce as to be a part thereof. The question has been so often and elaborately discussed that we content ourselves with the simple statement of the rules, and the citation of a few of the authorities. *Pedersen v. Delaware, L. & W. R. Co.,* supra; *Lamphere v. Oregon R. & N. Co.,* 116 C. C. A. 156; *San Pedro, L. A. & S. L. R. Co. v. Davide,* 127 C. C. A. 454; *Knowles v. New York, N. H. & H. R. Co.,* 164 App. Div. 711 (150 N. Y. Supp. 99); *Louisville & N. R. Co. v. Walker's Admr.,* supra; *Alabama G. So. R. Co. v. Skotzy,* 196 Ala. 25 (71 So. 335); *Peery v. Illinois Cent. R. Co.,* 123 Minn. 264 (143 N. W. 724); *Chesapeake & O. R. Co. v. Kornhoff,* supra; *St. Louis, S. F. & T. R. Co. v. Seale,* 229 U. S. 156.

But defendant was in no wise prejudiced by the submission of the case under the Federal act, even if it were conceded that plaintiff was not, at the time, engaged in in-

terstate commerce, as no question of as-

2. APPEAL AND ERROR: harm-less error: application of Federal rather than state law.

sumption of risk is involved, and the rule of comparative negligence, as established by Section 2071, Supplement to the Code, 1913, is the same as under the Federal act.

II.  At the close of plaintiff's testimony, counsel for defendant moved the court to withdraw from the jury the separate grounds of negligence alleged in his petition, and

3. NEGLIGENCE: proximate cause: jury question on conflicting evidence.

to direct it to return a verdict in its favor. The first motion was sustained in part; the motion for directed verdict was over-ruled.  Error is predicated upon both rulings.

Much difficulty was encountered by the engineer of the train No. 130 in keeping up steam during the day.  During the forenoon, stops were made at different places, while extra fuel was carried by the crew and section men.  The engine and caboose returned to Clarion at noon, and plaintiff informed the chief dispatcher of the defective condition of the engine, and requested another.  No engine was available at that time, and he was directed to proceed, and do the best he could with the engine in question.  The difficulty to keep up steam continued during the afternoon, and the stop at Cornelia, where the accident occurred, was due to the failure of the engine.  At 5:35, plaintiff received an order at Thornton to return to Clarion ahead of No. 87, the local running from Hayfield, Minnesota, to Clarion, Iowa.

Under the rules of defendant, it was the duty of the dispatcher to deliver a copy of this order to the crew of No. 87, but for some reason, this duty was neglected.  Plaintiff, at the time he received the order, was informed of the whereabouts of No. 87.  None of the crew of this train knew of No. 130, or that it was running in backward motion ahead of it.  There was no turntable at Thornton, and the engine from that point and to Clarion was required to

run to Cornelia backward, pulling the caboose in front.

The rear brakeman is generally the flagman, under the rules of defendant, and it is his duty to protect the train from the rear, by going back a sufficient distance with a light, torpedoes, or other means provided and in use for that purpose.

The grounds of negligence charged, which were submitted to the jury, were, in substance, that defendant was negligent in failing to order its crew in charge of No. 87 to proceed with caution, prepared to stop within their vision; that, after notice of the defective condition of the engine attached to No. 130, it was negligent in permitting No. 87 to follow so closely at a dangerous rate of speed, in not providing the crew of No. 87 with a copy of the order to plaintiff to proceed to Clarion ahead of it, and in not warning its crew of the location of No. 130, in permitting No. 87 to run at a high and dangerous rate of speed around a sharp curve at Cornelia, and in the vicinity of embankments partially obscuring the vision of the engineer, and in not proceeding with the engine under control and prepared to stop in time to avoid collisions; and other grounds of substantially the same import.

It is the contention of counsel for appellant that it was the duty of the conductor in charge of the train, when it stopped at Cornelia, to direct the rear brakeman to perform the duties of flagman, and to see to it that the train was fully protected from the rear; and that his failure to attend to this duty upon the occasion in question was the sole cause of the collision. A rule of defendant's, known as No. 99, provides, in substance, that, when a train is stopped or delayed, under circumstances when it may be overtaken by another train, it shall be the duty of the flagman to go back with stop signals and torpedoes a sufficient distance to insure protection.

It is conceded that plaintiff was the superior officer in

charge of the movements of the train, and that, while he
had the authority to do so, he did not direct the flagman to
perform his duty, to protect the train, and that he took no
steps to see that a flagman was sent back for that purpose.
There is direct conflict in the testimony of the plaintiff and
the rear brakeman as to what occurred at Cornelia. The
latter testified (and in this testimony he is corroborated,
to some extent, by the testimony of the engineer of a con-
versation with plaintiff), that, immediately after the ca-
boose stopped, he told plaintiff he would take charge of
the section men, and have them carry grain doors from the
elevator to the engine, and thereby facilitate their depar-
ture; that, upon his return to the caboose, he made some in-
quiry relative to No. 87, to which plaintiff replied, in sub-
stance, that it was going to tie up. Plaintiff denied the
conversation testified to by the engineer, and also the above
testimony of the brakeman, and stated that he assumed
that the train had been flagged by him, and that he knew
nothing to the contrary, until the signal to advance was
sounded by the engineer, when he looked for the flagman,
and discovered No. 87 approaching at a high rate of speed.
The conductor in charge of Train No. 87, upon cross-exami-
nation, testified as follows:

"If I had been advised by message that Train 130 was
in backward motion, I would have cut down our speed to
the same they were supposed to make, 15 miles an hour:
that is a time-card rule, the backing-up rule, and was in
force at that time. I had no means of knowing, on that
particular occasion, that Engine 130 was in a backward
movement unless I was so advised by a train order or mes-
sage. I didn't know they were on the road at all."

The engineer testified that he could not have stopped
No. 87 after observing plaintiff's caboose, had his speed not
exceeded 15 miles per hour. It is quite apparent, notwith-
standing the duty of the crew of Train No. 130 to protect

itself from the rear, that, had a copy of the order received by plaintiff at Thornton been in possession of the conductor of No. 87, the engineer and fireman would, for self-protection, if not for other reasons, have maintained a careful lookout ahead for No. 130.

Plaintiff and the crew of his train were moving under the orders of the chief dispatcher, and, but for the defective instrumentalities furnished, would not have been in the position of danger shown at the time of the collision. The credibility of the witnesses was for the jury, and, if the jurors believed plaintiff, they must have found that he relied upon the rear brakeman to discharge his duty as flagman. Negligence in this respect upon his part would be chargeable to the defendant, and not to plaintiff. *Pennsylvania R. Co. v. Goughnour,* 208 Fed. 961.

Testimony was offered to the effect that it was a part of the duty of the engineer, in approaching a curve, under conditions obscuring his vision, to have his engine under control so that same could be stopped within the range of his vision. Plaintiff testified that No. 87, when he first saw it, was running at 40 miles per hour. Its crew, however, testified that it was not running to exceed 25 miles per hour. There was also evidence tending to show that it was the duty, under the rules of the defendant, of a train following another in backward motion to reduce its speed to 15 miles per hour, the speed allowed for the latter. Proper signal lights were displayed on the rear of plaintiff's caboose. The testimony was in conflict; but the jury might have found therefrom that the engineer or fireman on No. 87 could, by the exercise of ordinary care, have observed the lights on plaintiff's caboose for a sufficient distance to have stopped the train and avoided the collision.

There was sufficient evidence of negligence on the part of the defendant, in the respects charged, to justify sub-

mission of that question to the jury. Contributory negligence of the plaintiff, under the Federal act,

**4. NEGLIGENCE:** contributory negligence: when not a defense.

and also under Section 2071, Code Supplement, 1913, is not a defense, and goes only to the reduction of damages. The court so instructed.

Plaintiff was, of course, required to observe the rules of the company, with which he was perfectly familiar; but it could hardly be said, as a matter of law, that the proximate cause of the collision and his consequent injuries was his failure to require the flagman to perform a duty connected with his employment, or to perform it himself.

III. The court refused to give certain instructions requested by counsel for defendant. These instructions related to the duty of plaintiff to see that his train was properly protected, if the flagman failed, for any reason, to comply with the rule requiring him to do so, in case such failure was known to plaintiff; and were to the effect that, if the failure to display such signals as were necessary to protect plaintiff's train against the injuries complained of was due solely to his negligence, he could not recover. The substance of these instructions, so far as the request was proper, was, in our opinion, covered by the instructions given. Instructions given by the court were made more directly applicable to the evidence, but embodied substantially the matter covered by those requested. Perhaps the court's instruction could properly have included other matters included in the requested instructions, but it is quite apparent that no prejudice resulted on account of the failure of the court to more fully incorporate the substance of the requested instruction in those given.

IV. Exceptions urged to Instruction 14 do not seem to have been included in the exceptions taken before instructions were read to the jury. The instruction was ap-

parently based upon issues tendered, but not included in those specifically mentioned in the court's instructions. Section 3705-a, Code Supplement, 1913, required that the exceptions specifically point out the grounds thereof, and we have repeatedly held that a failure to do this operates as a waiver of any error in the instruction. *State v. Nott*, 168 Iowa 617; *Parkhill v. Bekin's V. & S. Co.*, 169 Iowa 455.

5. TRIAL: instructions: objections and exceptions: failure to except before submission.

V. The only exceptions urged in the court below to Instruction 15, now complained of by defendant, are those mentioned in its motion for new trial. We have held that, to entitle exceptions made for the first time in the motion for new trial to be considered, the same must be accompanied by a sufficient showing that the error was not discovered at the time of the trial, and that a mere statement of that fact in the motion is not sufficient. *Chumbley v. Courtney*, 181 Iowa 482; *Dimond v. Peace River L. & D. Co.*, 182 Iowa 400.

Other objections to instructions need not be considered separately and in detail. They are sufficiently disposed of by what has already been said.

We find no error in the record, and the judgment of the court below is—*Affirmed*.

PRESTON, C. J., LADD and GAYNOR, JJ., concur.