CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V. PATRICK McCARTY.

FILED OCTOBER 21, 1896. No. 6751.

1. **Master and Servant:** RISKS OF EMPLOYMENT. A servant generally does not assume the risk of dangers due to his master's negligence, nor does he, in all cases, assume the risk of dangers arising from

sudden unforeseen circumstances, not ordinarily incident to the employment.

2. ———: ORDERS: OBEDIENCE: NEGLIGENCE. When a master gives a servant a command requiring the doing of an act not within the usual scope of the servant's duty, which must be performed at once or not at all, without opportunity for deliberation, the servant is not charged with contributory negligence, even though there may have been danger apparent to him in the performance of the act, unless the danger was so patent that a prudent man would not have obeyed.

3. ———: ———: ———: ———. In such case the master may be negligent in giving the command, although the servant was not negligent in obeying it.

4. ———: ———: ———: ———. The test of contributory negligence in such cases, as in others, is whether the servant in obeying conducted himself as a man of ordinary prudence would conduct himself under the circumstances. An instruction that the servant was not negligent unless no one but a reckless or foolhardy man would have obeyed, is therefore erroneous.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

The facts and issues appear in the opinion.

*M. A. Low, W. F. Evans,* and *C. S. Montgomery,* for plaintiff in error:

The petition does not state a cause of action. It is not alleged therein that defendant in error was ignorant of the danger of complying with the order of the foreman, or that the danger was not connected with, or was not within the scope of, his employment. Admitting the facts alleged in the petition to be true, the defendant in error cannot recover unless the danger was unknown to him and not within the scope of his employment. (*Indianapolis & St. L. R. Co. v. Watson,* 114 Ind., 20; *Louisville, N. A. & C. R. Co. v. Sanford,* 117 Ind., 265; *Louisville, N. A. & C. R. Co. v. Corps,* 24 N. E. Rep. [Ind.], 1046; *New Kentucky Coal Co. v. Albani,* 40 N. E. Rep. [Ind.], 702; *Missouri P. R. Co. v. Baxter,* 42 Neb., 793; *Skidmore v. West Virginia & R. R. Co.,* 23 S. E. Rep. [W. Va.], 713.)

If the evidence tended to show that the order given by

the foreman was a negligent one, it showed beyond a doubt that defendant in error, in attempting to comply with it, assumed the danger, or was guilty of gross negligence in attempting to obey it. The court erred in refusing to instruct a verdict for defendant below. (*Skidmore v. West Virginia & R. R. Co.*, 23 S. E. Rep. [W. Va.], 713; *Bell v. Western R. Co.*, 70 Ga., 566; *Patterson v. Pittsburg R. Co.*, 76 Pa. St., 393; *East Tennessee V. & G. R. Co. v. Duffield*, 12 Lea [Tenn.], 63; *Baker v. Western R. Co.*, 68 Ga., 706; *Roul v. East Tennessee R. Co.*, 11 S. E. Rep. [Ga.], 395; *Jones v. Galveston, H. & S. A. R. Co.*, 31 S. W. Rep. [Tex.], 706; *Cassidy v. Maine C. R. Co.*, 76 Me., 488; *Dowell v. Vicksburg & M. R. Co.*, 61 Miss., 519; *Smith v. Winona & St. P. R. Co.*, 42 Minn., 87; *Brown v. Oregon Lumber Co.*, 33 Pac. Rep. [Ore.], 557; *Priestley v. Fowler*, 3 M. & W. [Eng.], 1; *Rush v. Missouri P. R. Co.*, 36 Kan., 129; *Pennsylvania R. Co. v. Lynch*, 90 Ill., 334; *Dougherty v. West Superior Iron & Steel Co.*, 60 N. W. Rep. [Wis.], 274; *Atchison, T. & S. F. R. Co. v. Schroeder*, 47 Kan., 315; *Ft. Smith Oil Co. v. Slover*, 58 Ark., 168; *Leary v. Boston & A. R. Co.*, 139 Mass., 584; *Wormell v. Maine C. R. Co.*, 79 Me., 397; *Hogan v. Northern P. R. Co.*, 53 Fed. Rep., 519; *Patnode v. Harter*, 20 Nev., 303; *Hunter v. Cooperstown & S. R. Co.*, 112 N. Y., 371; *St. Louis, I. M. & S. R. Co. v. Rosenberry*, 45 Ark., 256; *Bardwell v. Mobile & O. R. Co.*, 63 Miss., 574; *Vimont v. Chicago & N. W. R. Co.*, 71 Ia., 58; *Yeager v. Burlington, C. R. & N. R. Co.*, 61 N. W. Rep. [Ia.], 315; *Toomey v. Eureka Iron & Steel Works*, 50 N. W. Rep. [Mich.], 850; *Showalter v. Fairbanks*, 60 N. W. Rep. [Wis.], 257; *Linch v. Sagamore Mfg. Co.*, 143 Mass., 206.)

The court erred in giving the instruction relating to the servant's duty to obey orders and the question of negligence. (*Missouri P. R. Co. v. Baxter*, 42 Neb., 793; *Ransom v. Getty*, 37 Kan., 76; *Whitsett v. Chicago, R. I. & P. R. Co.*, 67 Ia., 150; *Chicago, R. I. & P. R. Co. v. Houston*, 95 U. S., 703; *Union P. R. Co. v. Ogilvy*, 18 Neb., 643; *Cropsey v. Averill*, 8 Neb., 152; *Spears v. Chicago, B. & Q. R. Co.*, 43 Neb., 720; *Kearney Electric Co. v. Laughlin*, 45 Neb., 390.)

*Mahoney & Smyth, contra.*

In argument against plaintiff in error's first contention, reference was made to the following cases: *Mattise v. Consumers Ice Mfg. Co.*, 16 So. Rep. [La.], 400; *Promer v. Milwaukee, L. S. & W. R. Co.*, 63 N. W. Rep. [Wis.], 90; *Missouri, Kansas & T. R. Co. v. Hamilton*, 30 S. W. Rep. [Tex.], 679; *Settle v. St. Louis & S. F. R. Co.*, 30 S. W. Rep. [Mo.], 125; *Strong v. Iowa C. R. Co.*, 62 N. W. Rep. [Ia.], 799; *Sioux City & P. R. Co. v. Findlayson*, 16 Neb., 578; *Lee v. Smart*, 45 Neb., 318; *Kearney Electric Co. v. Laughlin*, 45 Neb., 390; *Dehning v. Detroit Bridge & Iron Works*, 46 Neb., 556; *English v. Chicago, M. & St. P. R. Co.*, 24 Fed. Rep., 906; *Miller v. Union P. R. Co.*, 12 Fed. Rep., 600; *Hawley v. Northern C. R. Co.*, 82 N. Y., 370; *Patton v. Western N. C. R. Co.*, 1 S. E. Rep. [N. Car.], 863; *Stephens v. Hannibal & St. J. R. Co.*, 86 Mo., 221; *Union Stock Yards Co. v. Conoyer*, 38 Neb., 488; *Mays v. Chicago, R. I. & P. R. Co.*, 14 N. W. Rep. [Ia.], 340; *Wells v. Burlington, C. R. & N. R. Co.*, 9 N. W. Rep. [Ia.], 364; *City of Lincoln v. Walker*, 18 Neb., 244; *Union P. R. Co. v. Broderick*, 30 Neb., 735; *Union P. R. Co. v. O'Hern*, 24 Neb., 775; *Kelley v. Chicago, M. & St. P. R. Co.*, 50 Wis., 381.

Defendant in error was not guilty of contributory negligence in attempting to obey the order of his master. (*Johnson v. Westchester & P. R. Co.*, 70 Pa. St., 357; *Swigert v. Hannibal & St. J. R. Co.*, 75 Mo., 475; *Texas & P. R. Co. v. Murphy*, 46 Tex., 356; *Filer v. New York C. R. Co.*, 49 N. Y., 47; *Texas & P. R. Co. v. Reed*, 31 S. W. Rep. [Tex.], 1058; *Lee v. Smart*, 45 Neb., 318; *Union P. R. Co. v. Broderick*, 30 Neb., 735; *Thompson v. Hermann*, 47 Wis., 602; *Johnson v. Missouri P. R. Co.*, 18 Neb., 690; *Patterson v. Pittsburg & C. R. Co.*, 76 Pa. St., 390; *Chicago & N. W. R. Co. v. Bayfield*, 37 Mich., 205; *Mann v. Oriental Print Works*, 11 R. I., 152; *Lalor v. Chicago, B. & Q. R. Co.*, 52 Ill., 401; *Rogers v. Overton*, 87 Ind., 410; *Miller v. Union P. R. Co.*, 12 Fed. Rep., 600; *Shadd v. Georgia, C. & N. R. Co.*, 21 S. E. Rep. [N. Car.], 554; *Hurlbut v. Wabash R. Co.*, 31 S. W. Rep. [Mo.], 1051.)

IRVINE, C.

This was an action by McCarty against the railway company to recover for personal injuries sustained by McCarty while in the employ of the company. He recovered a judgment for $10,000. The railway company, by petition in error, seeks to reverse this judgment. McCarty, by cross-petition in error, seeks also to reverse it, on the ground of error in sustaining a motion for a new trial after a former verdict in his favor for $15,000, and to have judgment entered on such former verdict.

The cross-petition in error may be briefly disposed of. The motion for a new trial after the first verdict contained numerous assignments requiring for their review a consideration of the evidence. What purports to be a bill of exceptions embodying the evidence on the first trial, and also certain evidence used in support of the motion for a new trial, is not authenticated as the law requires and cannot, therefore, be considered. Error in sustaining the motion, therefore, does not appear, for this reason if for no other.

On the second trial the evidence, which was, except in a few details, uncontradicted, was to the following effect: McCarty had had some experience in railroad work in the general line of service in which he was employed by this company. He had been employed by Butler, a foreman of a construction crew, some eight weeks prior to the accident, and during that interval his work had been with a crew engaged in moving earth by means of a steam shovel. This shovel occupied a temporary track from twelve to eighteen feet from the main track. A train of flat cars, moved along the main track, was loaded by means of the steam shovel and then drawn several miles away for the purpose of unloading. The train had a conductor, engineer, and a fireman, as well as two men designated as "cable men," whose duty it was to assist in the unloading of the train. At the shovel, in addition to Butler and the men operating it, were four laborers,

one of whom was McCarty, and whose general business it was to work on the ground and assist in loading. These men were employed and discharged by Butler, and subject generally to his orders. When the hour for ceasing work had almost arrived on the day the accident occurred the train had been loaded, and it was Butler's desire to unload it that night. He concluded, therefore, to send the men working at the shovel with the train to assist in unloading. He testifies that before the train started he gave them a general order to get aboard. This is contradicted; but no particular significance attaches, because it is undisputed that if such an order was given it did not reach McCarty's ears. The train then started, and as it was pulling out Butler commanded McCarty to get aboard. McCarty undertook to do so. There were no steps or hand-holds on the cars, and McCarty, for the purpose of boarding them, seized with his right hand a stake on the side of a car and placed his right foot on the casing above one of the journals. This casing was rounded on top and McCarty's foot slipped off and the other foot passed beneath the wheels, crushing it so that a partial amputation of the foot was necessary. The testimony as to the condition of the ground adjoining the tracks and the construction of the cars is such as to create a very reasonable inference that to board the cars while in motion was a more or less dangerous proceeding. There is no evidence tending to show that any better or safer method existed of getting upon the cars than that which McCarty undertook to pursue. The argument of the railway company, stated in a condensed form, is that there is no obligation resting upon a master to exercise greater care for a servant's safety than the servant is himself required to exercise; and that if it was negligence for Butler to command McCarty to board the train while it was in motion, it was contributory negligence for McCarty to obey the order, it being neither alleged nor proved that the danger was not so apparent and so well known to McCarty as to Butler. Numerous authorities

are cited in support of the arguments on either side of this proposition; but we do not believe that their review in the opinion would be of any utility. It is only necessary to say that they disclose the hopeless conflict which exists among the authorities on many questions connected with the rights of master and servant in such cases; and to here collate them would only serve to show the desirability of "employers' liability acts," which would, by harmonizing the law, make it more nearly just both to master and servant than can be claimed as a result of the work of the courts in attempting to adjust the antiquated rules of common law to the vastly changed conditions of modern times.

Our conclusion, after a consideration of the subject, is that it is a harsh and unreasonable rule which charges a servant, when commanded to perform an act by his master, with the duty of at once determining whether or not the act can be safely performed, and then performing it at his peril, or refusing to perform it at the expense of losing his employment. The risk incurred by obeying a negligent command of the master is not one ordinarily incident to the servant's employment, and is not an assumed risk, because negligence on the part of the master is not presumed to be a feature of the employment. It is true that where ample time exists for examination and reflection, a servant may not, beyond a certain limit, continue in the service, performing dangerous acts, except at his own risk; and it is this consideration which governs the cases holding that the continued use of defective appliances without protest and a promise by the master to remedy them, discharges the master from liability. With the case, however, of a command given suddenly, which must be obeyed immediately or not at all, a different question is presented. The servant is confronted with a new danger, one not contemplated when he entered the employment, and one not made a part of it by continued use. The servant has certainly in the first place a right to presume that the master gave the com-

35

mand advisedly and in the exercise of due care. If the servant disobey, he forfeits his employment; and even though he be aware of the danger, whether or not it is negligence for him to obey depends upon circumstances. The act may be so foolhardy, so clearly entailing disaster, that the only reasonable course is to disobey. The test of negligence is in such cases as in others, whether or not a man of ordinary prudence so situated would obey or refuse. In many cases a man of ordinary prudence compelled to decide instantly, even though aware of the existence of danger, would prefer obedience and would take the risk. It is not true, however, because the servant in such cases may not be guilty of negligence in obeying, that it follows necessarily that the master was not negligent in giving the order. In the first place, reflection and the exercise of discretion is the business of the master, and not of the servant. It is the duty of the master to determine what shall be done, and how. In general, the duty of the servant is merely to obey; and even when the command is given suddenly and without previous reflection, as in this case the master charged with the exercise of discretion has imposed upon him the duty of rightly directing and safely directing. Of course, a sudden exigency may arise which would relieve the master of any imputation of negligence in requiring, under such circumstances of exigency, a dangerous act to be suddenly performed. But here the failure to command McCarty to board the train before it started was not due to any sudden exigency, but apparently to mere inattention on the part of the foreman, and a failure by him to conceive the idea of sending men with the train until the last moment. It was not McCarty's duty to go with the train in the absence of a specific order for that purpose; and under the circumstances we think there was evidence to support a finding that Butler was negligent in giving the command and McCarty not negligent in obeying it. The law is thus stated by Judge Brewer in *English v. Chicago, M. & St. P. R. Co.*, 24 Fed. Rep., 906:

"Where a master commands a servant to go outside of his regular employment to do a work which is attended with a special danger, and the servant, in response to the specific commands of the master, goes and does the work, in the way and at the time directed, the fact that the servant knew that it was dangerous does not exonerate the master from responsibility or make the servant guilty of contributory negligence, unless the character of the danger is so patent and so extreme that no one but a foolhardy, reckless man would attempt it." (See, also, to the same effect, *Miller v. Union P. R. Co.*, 12 Fed. Rep., 600; and to a similar point, *Missouri P. R. Co. v. Tietken*, 49 Neb., 130.)

The district court, evidently endeavoring to follow the general principles which we have indicated, and guided largely by the language of Judge Brewer in *English v. Chicago, M. & St. P. R. Co.*, *supra*, gave the following instruction: "It is in general the duty of an employe to obey the orders of his superior, and in the absence of knowledge or means of knowledge to the contrary, he may presume it safe for him to do so. However, he may not obey blindly and without regard to his personal safety; for it is incumbent on him to protect himself by the exercise of such care and diligence as the circumstances require. But when he receives an order which must be obeyed immediately or not at all, and when he has no time or opportunity for considering the situation or the danger, if any, of a compliance with the order, he may rely on the skill and judgment of his superior, unless to obey the order would be reckless, rash, or foolhardy on his part. If to obey would be so dangerous as to indicate that the employe had abandoned all care and consideration for his own safety, then obedience would be negligence in itself, which if it contributed to the injury would prevent a recovery." We think there was error in this instruction, notwithstanding the general principles we have indicated; although the language employed does not perhaps go beyond that of Judge Brewer in the

case referred to.   The performance of an act by an em-
ploye not within the usual line of his duties and in obedi-
ence to a command acting instantly and under circum-
stances permitting no deliberation, is not the assumption
of a risk ordinarily incident to the employment, and is,
therefore, not one of the assumed risks of servants.   The
right to recover for injuries sustained in the course of
performing such acts depends upon ordinary considera-
tions of negligence and contributory negligence.   The
test of negligence is whether a man of ordinary prudence
would so conduct himself under the circumstances, and,
therefore, the master is in such case only liable for the
consequences of a command which a person of ordinary
prudence would not have given under the circumstances,
and which a man of ordinary prudence would have obeyed
under the circumstances.   In stating the law to the jury
the court should have borne in mind this test.   But the
instruction we have quoted departs from the rule in sev-
eral respects.   In the first place, the first sentence was
erroneous in implying that as a matter of law McCarty
had a right to presume that it was safe for him to obey
this command.   Where the danger is not known or obvi-
ous, as the instruction states, the servant may presume
the act safe because it was commanded.   But here the
danger was as apparent to him as to the master, and
there was no basis in the evidence for submitting the case
on the theory that the danger was not known or suscepti-
ble of knowledge.   In the second place, according to the
instruction, the servant would be excused in obeying the
order unless obedience would be "reckless, rash, or fool-
hardy."   This can only mean that in order to charge a
plaintiff with contributory negligence in such cases his
act must not only be one which an ordinarily prudent man
would not perform, but must be one which no man except
a reckless, rash, and foolhardy man would perform.   In
other words, instead of holding up to the jury as a test
of conduct that of a man of ordinary prudence, it raises
before them as a type the conduct of a man reckless and

foolhardy, and excuses contributory negligence if not within the line of conduct that such a man would pursue. Finally, this erroneous idea is emphasized by the last sentence of the instruction, by which it is plainly implied that obedience to the command would not constitute negligence unless the circumstances were such as to indicate that the servant had abandoned all consideration for his own safety. This last sentence, to a certain extent, explains the previous one, and the combined effect of the two is to state to the jury that the servant might recover if the circumstances were such that any man, however imprudent, however careless, might have performed it, provided he kept in view the slightest consideration for his safety. In the respects indicated the instruction fails essentially to propose to the jury the true test of negligence, to-wit, the conduct of a man of ordinary prudence under the circumstances.

REVERSED AND REMANDED.