## Stearns Coal & Lumber Company v. Calhoun.

(Decided November 9, 1915.)

## Appeal from McCreary Circuit Court.

1. **Master and Servant—Unsafe Appliance—Proximate Cause—Question for Jury.**—In an action by a servant against his master for damages for injuries alleged to have been caused by a defective coal cutting machine, evidence considered and held that the question whether or not the defective condition of the machine was the proximate cause of the injury was for the jury.

2. **Master and Servant—Assumption of Risk.**—A servant does not assume the risk of injury from a defective machine merely because its defective condition is known to or clearly observable by him. It must further appear that the danger therefrom is known to or clearly observable by the servant.

3. **Master and Servant—Assumption of Risk—Assurance of Safety.**—Where the master assures the servant that a machine is safe, the servant may rely on such assurance and continue at work, unless the danger is so obvious that an ordinarily prudent person would refuse to work.

4. **Damages—Instructions—Life Tables—Error.**—It is not error for the trial court to fail to admonish the jury that the life tables admitted in evidence are competent only for the purpose of showing the probable duration of life, in the absence of a request for such an instruction.

J. N. SHARP for appellant.

JOHN W. RAWLINGS, ROBERT HARDING and JOHN W. SAMPSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries, plaintiff, Mart Calhoun, recovered of defendant, the Stearns Coal and Lumber Company, a verdict and judgment for $1,500. The defendant appeals.

At the time of the injury plaintiff was engaged in cutting coal with a Sullivan Punching Machine. The machine weighs about 900 pounds, is 16 inches in diameter, and has a wheel on each side by which it is moved. The machine is placed on a board about 10 feet long and 40 inches wide. The pick which cuts the coal is operated by means of a piston, which pushes in and out. The machine is operated by compressed air and is put in mo-

tion by means of a throttle valve. The pick runs through a shield and there is a sleeve that holds the pick. The operator of the machine sits at the rear. When the air is turned on both the machine part and the piston work. According to plaintiff's evidence, the machine would not work. He and Ben Strunk, a fellow-workman, rolled the machine back. The piston would not slip out and plaintiff caught the sleeve with his foot for the purpose of making it start. In some way he was thrown down with his feet in front and three of his toes were cut off. The machine had been out of order the day before and was taken out by the electrician for the purpose of repairing it. The electrician told plaintiff that he had fixed it and it was all right. At the time of the accident plaintiff had been working with it about an hour and it had stopped two or three times before. On cross-examination, plaintiff stated that he and Strunk were partners on the contract. He had been running a coal cutting machine for about twenty months. He knew if the air was turned on that the machine would move. Every time they would set the machine on a new board the needle hung up. The only thing wrong with the machine at the time of the accident was the fact that the needle would not pull out. While it had been working that morning, it would not work right. His partner, Ben Strunk, turned on the air. If the machine had not started so quickly he would have taken his foot off. Plaintiff further says that if the machine had been in good order it would not have injured him. It was necessary for him to put his foot on the sleeve that morning as he had been doing. If the machine had been in good order it would not have jumped so hard. It was the starting of the machine that caused him to be jerked around and his foot thrown in front of the pick.

There might be some merit in defendant's contention that the defect in the machine was the occasion and not the cause of the accident, if the proof merely conduced to show that the turning on of the air, which was done by a fellow servant, was the real cause of the accident. Plaintiff's evidence, however, is to the effect that if the machine had been in good order it would have worked smoothly when the air was turned on, and had it worked smoothly, the accident would not have occurred. Being out of order, the turning on of the air caused the machine to start with a jerk and, according

to plaintiff, the jerk is what caused the accident. In view of this evidence, and of the further fact that the jury had before it a cut of the machine, by which its operation was explained, we conclude that the question whether or not the defective condition of the machine was the proximate cause of the injury was for the jury.

The further point is made that as the machine had stopped two or three times before, its defective condition was known to plaintiff, and as he, with knowledge of that condition, continued to work with the machine, he assumed the risk and cannot recover. To prevent a recovery in a case like this, it is not sufficient to show merely that the plaintiff knew of the defective condition, or that it was clearly observable. In addition thereto it must be shown that the danger from such condition was known, or clearly observable, and appreciated by him. C. & O. Ry. Co. v. DeAtley, 159 Ky., 687. Though the evidence conduces to show that the machine had stopped on two or three occasions that morning, it does not appear that when it was started it began to move with such violence that the danger therefrom was clearly observable. Furthermore, the electrician, who repaired the machine, assured plaintiff that it was all right. That being true, plaintiff had the right to rely on the assurance thus given and to continue to use the machine, unless the danger was so obvious that an ordinarily prudent person would refuse to work. Under these circumstances, it cannot be said, as a matter of law, that plaintiff assumed the risk.

Another error relied on is the failure of the trial court to admonish the jury that the life tables which were admitted as evidence were competent only for the purpose of showing the probable duration of life. While we have ruled that such an instruction should be given when requested by either party—L. & N. R. R. Co. v. Irby, 141 Ky., 145—a failure so to instruct is not error where no such request is made.

Judgment affirmed.