## Louisville & Nashville Railroad Company v. Williams' Administrator.

(Decided May 18, 1917.)

### Appeal from Hart Circuit Court.

1. Master and Servant—Employers' Liability Act—When Employe is Employed in Interstate Commerce.—A section hand in the service of an interstate railway carrier, killed while going to a place designated by his foreman to assist in unloading ties that would

be placed in a track regularly used for interstate traffic, was employed in interstate commerce within the meaning of the employers' liability act of April 22, 1908, giving a right of recovery against the carrier for the death of an employe while so engaged.

2. Master and Servant—Order of Superior—Assumption of Risk—Question of Law.—A section hand thirty-six years of age, though having had but a few days' experience in railroad work, and though acting under the immediate command of his superior, who attempts to cross a railroad track in front of a train which is only a few feet away and which he knows is approaching, will be held, as a matter of law, to have assumed the risk, since the danger was so obvious and imminent that an ordinarily prudent person in his situation would have refused to encounter it.

WATKINS & CARDEN, SIMS & RODES and BENJAMIN D. WARFIELD for appellant.

H. L. JAMES and C. B. LARIMORE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Albert Williams, a section hand in the employ of the Louisville & Nashville Railroad Company, was struck by one of its trains and received injuries from which he subsequently died. His administrator brought this suit under the Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149, Comp. Stat. 1913, section 8657), as amended by the act of April 5, 1910 (36 Stat. at L. 291, chap. 143, Comp. Stat. 1913, section 8662), to recover damages for his conscious pain and suffering during the period intervening between his injuries and death, and for the pecuniary loss sustained by the dependent members of his family on account of his death. The jury returned a verdict in favor of plaintiff for $10,000.00, of which $7,000.00 was apportioned to decedent's widow, and $1,000.00 each to his three infant children. Judgment was entered accordingly and the railroad company appeals.

Briefly stated, the facts are as follows: Appellant's line of railroad extends from Cincinnati, Ohio, through Kentucky, to New Orleans, Louisiana. Its track, which runs through Hart county, the place of the accident, is used both for interstate and intrastate traffic. At the time of his death decedent was thirty-six years of age, and his family consisted of his wife and three infant children, whose ages ranged from two to fifteen. About seventeen

years before the accident he was employed by a railroad at Indianapolis for a period of about five days. Since that time he had been engaged in farming and sawmill work. He went to work for appellant as a section hand on Saturday, October 2, 1915, and worked that day. He was regarded as a green hand. He did not work on the following Monday, because of the illness of his child. The next day, which was October 5, he reported for duty, and went with the other section hands from Rowletts to mile 77, where they were employed in "smoothing" the track. After working at this point for twenty or twenty-five minutes they went to mile 79 to unload two cars of ties, which were being brought from Rowletts to be used in the track. When mile 79 was reached, the crew, including Williams, proceeded to "smooth" the track at that point, when the train bringing the ties approached. The members of the crew were in charge of a foreman, whose duty it was to select the place where the crew should unload the ties. At this juncture the train, which gave numerous signals of its approach, drew near, and the members of the crew scattered along the east side of the track to let it pass. They continued, however, to walk south with their backs to the train, which was going in the same dirction. At that time Higginbottom, the foreman, was in front, and was followed by Mansfield, Cole, Williams, Smith, Coats and Potter, in the order named. After proceeding in this order for about a rail's length, Mansfield, a witness for plaintiff, says that Higginbottom, the foreman, jumped on the track, and, without addressing anyone in particular, said, "On this side," and then went to the west side. At that time the men were not over five or six feet apart and all within about a rail's length of each other. Coats, another witness for plaintiff, says that when Higginbottom stepped on the track he said, "On west side." When Higginbottom did this he turned and looked at all the men, but did not address anyone in particular. When the order was given the train was from two hundred to three hundred feet distant. Higginbottom stepped to the west side and was followed immediately by Mansfield and Cole. For some reason decedent did not start across when the order was given, but hesitated for a perceptible interval of time, and when he did start across the train was only one or two rails distant. Mansfield says that he and Higginbottom had plenty of time to cross, and that decedent himself could have crossed if he had started when the order was given.

Coats also says that the decedent was a "slow kind of a fellow anyhow," and if he had started with the others it looks like he ought to have gotten across. When decedent stepped upon the track in front of the approaching train it was moving at from six to nine miles an hour. He did not go immediately across the track, but for some reason became confused, and after running a few feet in front of the train and towards the side from which he had come, was overtaken by the train, which passed over him and cut off one of his arms and both of his legs. According to the evidence for appellant, the foreman had already told the decedent to stay on the east side, and the order which he gave to go to the west side was addressed to those men immediately near him, and not to Williams, who was some distance away. The accident occurred about nine o'clock A. M. Shortly thereafter the decedent was carried to Cave City, where he died about one o'clock P. M. He was conscious during the greater portion of the time intervening between his injury and death and suffered intensely.

While negligence was alleged in general terms, the only negligence sought to be proved was that of the foreman in commanding decedent to cross the track at a time when it was dangerous to do so. In submitting this issue the trial court told the jury, in substance, that if they believed from the evidence that the section foreman ordered the decedent to cross the track in front of the approaching train at a time when it was dangerous to cross, and if the decedent, in attempting to comply with the order, was struck and injured, they should find for plaintiff, unless the danger of so doing was known to the decedent, or was obvious and apparent, and the risk of injury therefrom was such that an ordinarily prudent person in the exercise of ordinary care for his own safety, under like or similar circumstances, would have refused to obey the order, in which event the decedent assumed the risk and they should find for the defendant.

Numerous errors are assigned, but, in view of the conclusion of the court, the only questions we deem necessary to consider are, (1) whether the case is controlled by the Federal Employers' Liability Act, and (2) whether the trial court should have sustained appellant's motion for a peremptory instruction.

1. Appellant is an interstate carrier. Its track at the place of the accident was regularly used for interstate traffic. Decedent was a section hand, and just prior

to the accident was employed in "smoothing" the track. At the time of his injury he was going to a place designated by the foreman to assist in unloading ties that were to be used in the track. Under these circumstances, the decedent was engaged in work necessary to the maintenance and repair of the track—an instrumentality of interstate commerce, and was, therefore, employed in interstate commerce; and the trial court did not err in so holding. Pederson v. Delaware, L. & W. R. Co., 229 U. S. 149, 57 L. Ed. 1125.

2. Even if we assume that the evidence was sufficient to show that the command of the foreman was addressed to Williams, and that Williams acted in obedience to that command, it may be doubted whether, in view of the fact that the others who attempted to cross, did cross in safety, and of the evidence to the effect that if the decedent had promptly obeyed the order he, too, could have crossed in safety, the order of the foreman was given at a time when the foreman knew, or by the exercise of ordinary care could have known, that it was dangerous for the decedent to cross; but, passing this phase of the case, there still remains the further question whether the danger of crossing in front of the approaching train was so obvious and imminent that an ordinarily prudent person in decedent's situation would have refused to obey the order. In support of his contention that this was a question for the jury, plaintiff's argument is as follows: Decedent's only experience as a railroader consisted of five days' employment by a railroad in Indianapolis seventeen years prior to the accident, and of one day's employment by appellant. During the intervening period of time he lived in a portion of Hart county remote from railroads, where he engaged in farming and sawmill work. His foreman and fellow-workmen on the occasion of his injury regarded him as a green hand in the railroad business. At the time of the accident the train was approaching from decedent's rear. In this situation he was ordered to cross the track. In view of his lack of experience that would have enabled him to appreciate the danger, and of the direct command of his foreman that required him to act in an emergency, it is insisted that it cannot be said, as a matter of law, that the danger was so obvious and imminent that an ordinarily prudent person in his situation would have refused to encounter it. While it may be true that decedent was a green hand, and, therefore, not an efficient workman in "smoothing"

the track, and that because of his inexperience he was not able to appreciate the dangers growing out of the operation of complicated machinery, or incident to the handling of numerous trains in a railroad yard, no such emergency existed in the present case. The danger with which he was actually confronted was that of crossing a single track in front of an approaching train. Decedent was not without experience in the operation of trains. Many years prior to the accident he had worked for a railroad at Indianapolis for a period of five years. Any person of common understanding who has ever seen a train must know that if he steps on the track in front of an approaching train he will be struck by it. All the witnesses agree that the train had given numerous signals of its approach and everyone knew that it was coming. Not only so, but the engine was only a few feet away and in plain view of the decedent. Under these circumstances, he started to go across the track. It seems to us, therefore, that fair-minded men can draw but one reasonable inference from the proven facts, and that is that the danger of crossing the track, under the circumstances, was so obvious and imminent that an ordinarily prudent person in decedent's situation would have refused to encounter it. Indeed, if such was not the character of the danger with which decedent was confronted, we are unable to imagine a case of such obvious and imminent danger that the injured servant, notwithstanding the order of his superior, will be held to have assumed the risk. It follows that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed and cause remanded for a new trial consistent with this opinion.