## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Estes.

(Decided September 21, 1920.)

### Appeal from Lincoln Circuit Court.

Master and Servant—Safe Place to Work.—Where a servant having fears of the safety of a place of work, protests to the master about entering upon it, and the master expressly directs him to proceed, assuring him that the place of work is not dangerous, and the servant relying upon the presumed superior knowledge and judgment of the master enters upon it, and suffers injury he will not be refused a recovery, because of his knowledge of the danger, unless the danger is so patent and obvious, that an ordinarily prudent man would refuse to undertake it.

K. S. ALCORN, GALVIN & GALVIN and EDWARD COLSTON for appellants.

EMMET PURYEAR and GEORGE D. FLORENCE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellee, George Estes, was a carpenter of one year's experience and in the employment of the appellants, Cincinnati, New Orleans and Texas Pacific Railway Company, and the Souhtern Railway Company. James Snyder was the foreman of the crew of employees with whom the appellee was serving. They were directed to go from Lexington to Danville and there to repair a shop belonging to the appellant railroad companies. The shop was a building about forty feet in length, twenty

feet in width, and the eave of the roof was about twenty feet from the ground. The roof slanted only one way and had a pitch of about six inches to the foot. The roofing was of a character of heavy paper, suitable for that purpose, but, by use and wear, had deteriorated in quality and it was thought to be necessary to tear off the old roof at certain places and replace it with a new one. Certain repairs were, also, purposed to be made upon the doors, windows and other portions of the shop and certain small buildings nearby were to be repaired. The day upon which the carpenters went to Danville to repair the shop there was a very strong, fierce gale of wind blowing which seemed to have its purpose set to continue until the end of the day. The paper for the new roof, at the direction of the foreman, was. taken out by the employees, who were under his authority, and carried to the shop for the purpose of putting it upon the roof, when the appellee became apprehensive, that the roof of the shop would be a dangerous place to work, in handling the paper, on account of the high, fierce wind then blowing, and that the work necessary in removing the old paper and putting on the new under the conditions prevailing would be a work, hazardous and attended with danger. According to the evidence introduced in behalf of appellee, he represented his misgivings of the safety of the roof, as a place of work, under the conditions, to the foreman and requested, that he be permitted to engage in making the other intended repairs, in doing which he would be working upon the ground. The foreman overruled his objections, and stated that they had been sent there to do that work and they would have to do it, and directed him to go on upon the roof, and at the same time stated that it was not so dangerous, but what they could go upon the roof and do the work. Estes had had but little experience. in putting on and taking off paper roofing. Snyder had had thirteen or fourteen years' experience as a carpenter. Estes deposed, that knowing of the long experience of Snyder, he considered that he knew more about the danger of handling roofing of the character that was to be handled, under the conditions, than he did, and although apprehensive, that it was somewhat hazardous under the circumstances, submitted ·to the judgment of Snyder and relied thereon, that the work was not dangerous, and the direct command to go upon the roof and proceed with the work. Thereupon Estes and another of the employees went upon the roof, and Estes tore off a roll of the roofing and stepped within three or four feet

of the edge of the roof and threw it off. Just at that time, the wind took up a piece of the roofing and blew it against Estes with such force, that he was blown off of the building and fell to the ground, breaking his arm at the elbow and otherwise bruising him. He endured much pain and suffering from the broken arm. The result was, that the arm become stiffened at the elbow, permanently crippling him and rendering him unable to pursue his avocation as a carpenter, or to do any kind of work requiring a use of the arm as in handling a hammer or saw, or to elevate his hand to his mouth. Estes did not loose the piece of paper from the roof, which blew against him and knocked him from the roof and only two other persons were upon the roof at the time, one Kelley and Snyder the foreman. The evidence does not prove, that the piece of the roofing, which blew against appellee and threw him headlong to the ground, was loosened by either Kelley or Snyder, and in fact, they depose, that it was not, and hence, it would seem that it was probably loosened from its hold by the action of the wind, probably assisted by the actions of the men in walking or working upon the roof. Having instituted this action against his employers for damages on account of the injuries, a jury awarded him the sum of one thousand dollars, and the court rendered a judgment in his favor accordingly. The defendants, below, have appealed from the judgment and seek a reversal of it, chiefly upon the ground, that the trial court erred to the prejudice of their substantial rights in denying their motion for a directed verdict, in their favor, at the close of the evidence for appellee and at the close of all the evidence. The ground upon which they contend, that the court should have determined the cause, in their favor by a peremptory direction to the jury, to find a verdict for them, is, that the evidence for appellee proves, that he was aware of and appreciated the unsafe character of the place, under the prevailing conditions, in which he was working, when injured, and that his knowledge of the conditions, which made the place and work hazardous was equal to that of the foreman, who represented the employers, and for that reason he had assumed all the risks in performing such work, at such a place and under such conditions, and for such reason, that he ought to have refused to engage in the work, and to have disregarded the positive command of the foreman as well as his assurance that the work was not dangerous: To sustain their contention they cite cases of Wilson v. Chess & Wymond Co., 117 Ky. 567; McGhee

v. Bell, 19 K. L. R. 267; McCormick, etc. v. Liter, 23 K. L. R. 2154; Lindsey v. Hollenbach, 29 K. L. R. 68; Nunnelly v. Prather, 157 Ky. 157; American Tobacco Co. v. Adams, 137 Ky. 414. Those cases, as well as many others, which might be cited, support fully, the general doctrine, which applies to the rights and liabilities of masters and servants, that where a servant knows and fully appreciates the dangers of a work, in which he is engaged, he assumes all the risks incident to the work, and although directed by the express command of the master or assured by the master, of the freedom from danger of the work, neither the command of the master nor his assurance of safety, will shift the risks of injury to the servant, from the servant to the master, if the work, which the servant is directed to do is so patently and obviously dangerous, that a person of ordinary prudence and caution would refuse to engage in it. It may be conceded, that where a servant knew and appreciated the dangers of a work and engaged in it without express directions from the master, or when assured by the master of its safety and the facts were such as to prove without controversy, that the dangers of the work were so open and obvious, that no person of ordinary prudence would engage in it, the courts have denied a recovery to the servant because of an injury received from the dangers arising from such an employment. This court, however, in a long line of adjudications, as well as the courts of other jurisdictions, have differentiated between the cases, composed of the character of facts as those above adverted to, and the cases, wherein a servant has engaged in a work under the express command of the master, after having objected to undertaking the work, because of his fear, that engaging in it would be attended with danger, and having received an assurance from the master, that the work was not hazardous and has proceeded relying upon such assurance on account of the presumed superior knowledge and judgment of the master. In such a state of case, the servant. is not denied a recovery for injuries received by him from the dangers of the work, unless the work was so openly and obviously dangerous, that a man of ordinary prudence would not undertake it, and this becomes· in nearly every instance a question for the jury. It is well settled, that the doctrine of assumed risk is very sparingly applied, where the master or his representative is present and the servant proceeds to work under the express directions of the master, although the servant is apprehensive and has

misgivings as to the safety of the place in which he is directed to work, or the work to be done and relies upon the presumed superior knowledge and judgment of the master that the work to be done is not dangerous. In Smith v. K. L. Co., 25 K. L. R. 1386, in discussing the doctrine under consideration, it was said: "The rule on this subject, as frequently announced by this and other courts, is, that, if the risk is such, that a prudent man would have refused to do the work under the circumstances because of the danger, then the servant acts at his peril in undertaking it, but where the probability of injury is such that the minds and judgments of prudent men might differ upon the certainty of its happening, and where the master insists after the objection of the servant, that he proceed with the work, then the servant has the right to rely upon the master's presumed superior knowledge." In I. C. R. R. Co. v. Langan, 116 Ky. 318, the principle was thus stated: "This would be true, if the danger was such an obvious one as that the injury was reasonably certain to result, so that none but a reckless man would have undertaken it under the circumstances. We understand the rule on this subject, to be, that if the danger or risk is such that a prudent man would have refused to do the work under the circumstances, because of the danger, then the servant will act at his peril in undertaking it. But where the probability of injury is such that the minds and judgments of prudent men might well differ upon the certainty of its happening, or with regard to whether the force or appliances are reasonably safe or adequate to the performance of the task, and where the master insists after objection, that the servant proceed with the work, or assured him that the force is adequate or the machinery safe, then the servant has a right to rely upon the master's presumed superior knowledge. The risk is thereby assumed entirely by the master and he impliedly assures the servant, who relies upon his statement, or who obeys his positive direction, that if he, the master is in error, as to the safety, he will indemnify the obedient servant against the consequence." The following authorities are substantially in accord with the principle above enunciated: W. U. T. Co. v. Haltby, 29 K. L. R. 523; Keene v. Key Stone Lumber Co., 118 S. W. 355; Pullman Co. v. Geller, 128 Ky. 72; Long's Admx. v. I. C. R. R. Co, 113 Ky. 806; Louisville Gelatine Works v. Minton, 144 Ky. 834; C. & O. R. Co. v. Shepherd, 153 Ky. 350; L.

H. & St. L. Ry. Co. v. Armstrong, 137 Ky. 146; Wake & Co. v. Price, 22 K. L. R. 696; Lasch v. Stratton, 101 Ky. 672; L. & N. R. R. Co. v. Ward, 19 K. L. R. 1900; Sherman & Redfield on Negligence 126; 1 Thompson on Negligence, sections 192-442; 22 Cyc. 1221-1222-1224; 18 R. C. L. 659. That the appellee was aware of the physical conditions upon the roof and that a strong wind was blowing, and that he feared that to engage in handling the paper for the roofing, upon the roof under such conditions, would be attended with unusual danger, must be admitted, and that but for the express command of the foreman and his assurance of safety, the appellee would doubtless have declined to engage in the work, but it can not be held that the probability of the danger was such, that the judgments of prudent men would not have differed, as to the certainty of its happening, or that the dangers of the work were so patent and obvious, that no prudent man would have undertaken it, or that an ordinarily prudent man might not have believed that it could be accomplished with safety, by the exercise of great care. In such a state of case, when acting under the direct command of the master, who is present, or who upon objection of the servant assures him of the safety of the work, the judgment of the master who is presumed to have superior knowledge is substituted for that of the servant, and it is only, where the danger of the place is so patent and obvious, that the opinion of an ordinarily prudent man, when acting as a servant, would not be overcome by the assurance of safety by the master, that the servant can-not rely upon such assurance. Hence, the court was not in error in overruling the motions of appellants, for a directed verdict, in their favor.

A criticism of the instructions given to the jury is made upon the sole ground, that they do not deny to the appellee recovery, if he knew the dangers of engaging in the work, as well as, if the danger was so obvious, that a prudent man would decline to engage in it. The instructions substantially required the jury, before finding a verdict for appellee to find and believe from the evidence, that the place of work was not safe, and that appellee engaged in it under the express direction of the master, and after an assurance from him that the place was not dangerous, and that appellee relied upon such assurance before engaging in the work, but although finding the above to be true, the jury was directed to find against appellee, if the danger of the place of work was so obvious, that a prudent man would have refused to

engage in it. In accordance with the principle enunciated in the above cited authorities, the criticism of the instructions is not meritorious.

The judgment is therefore affirmed.