## Wallis v. Illinois Cent. R. Co. et al.

Jan. 20, 1939.

ADRIAN H. TERRELL and C. C. GRASSHAM for appellant.
WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant, Russell Wallis, brought this suit to recover damages of the appellees, Illinois Central Railroad Company, and Edward P. Hunt, for an injury to his eye which he sustained while in the employment of the railroad company. Edward P. Hunt was the general foreman of the work in which appellant was engaged and superior in authority to appellant. For a statement of the facts relied on by appellant we will state the substance of the allegations of his petition.

Plaintiff alleged that in January, 1936, he was employed by the defendant railroad company as a boilermaker helper at its machine shops in the city of Paducah, Kentucky, and engaged in the duties required of

him by the defendant at the time and place he was injured, in dismantling a tank car and loading the scrap iron from it upon a trailer and that the defendant, through and by its foreman failed to exercise ordinary care to furnish or maintain for him a reasonably safe place to work where he was directed and required to be by the foreman, Hunt; that by reason of the dangerous and unsafe place furnished him to work and where he was required to be in performing his duties, particles of melted metal or molten steel dropped from a nut which was being sheared off above him under the directions of his foreman by an acetylene torch, into his right eye, and as a direct and proximate result thereof, the particles of hot metal injured his eye. He described the injuries to his eye and set out the sums of money he expended in hospital and doctor bills, etc., and prayed judgment against defendants for $10,000 for the injury to his eye and $300 expenses. Later, by amended petition he supplemented the original petition which amendment was in most respects a repetition of the original petition, but more specifically alleged that defendants carelessly and negligently ordered him to work under an acetylene torch in a place of danger and peril, and when directed by the foreman to work under the torch he did not have an opportunity at the time to reflect or to realize the danger of obeying his foreman's order and he proceeded with the work, not being aware of his peril, or having the opportunity to realize the danger in which he had placed himself, and that the defendants and each of them knew of the dangerous and unsafe place wherein he was directed and required to work, or could have known same by the exercise of ordinary care.

Defendants denied the allegation of negligence and affirmatively pleaded in separate paragraphs contributory negligence and assumed risk. The affirmative allegations were traversed of record, thus completing the issues. The case came on for trial before a jury and at the close of the evidence the court peremptorily instructed the jury to find a verdict for the defendants, apparently upon the grounds of assumed risk.

Both parties have briefed the case upon the question of assumed risk and no other questions are discussed or stressed in the brief. Hence the only question for our consideration is whether or not under the peculiar facts and circumstances of the case the doctrine of

assumed risk applies. To determine this question, a review of the evidence becomes necessary.

It appears that appellant was employed by appellee railroad company as a boilermaker helper in the year 1928. However, he had had a number of years of experience in machine shops and like work for a number of years previous thereto, totaling approximately 22 years. For some time previous to the accident complained of, plaintiff said that his work was classified as boilermaker helper and his duties consisted of operating machinery, such as drill presses, shearers, cutting scrap, etc., and helping the boilermaker in burning and scraping tanks, etc. He said as a boilermaker helper he was not required to, and did not operate an acetylene torch and not permitted to use that kind of tool. He said that at the time he received his injury he was working under Edward P. Hunt, the general shop foreman, and Edward Menendez, the latter being the boilermaker to whom plaintiff was the helper. Also, J. B. Clark and Carl Mullins were present and engaged in the same work at the time plaintiff was injured.

The events leading up to the injury as stated in brief of appellant, and which seem to be sustained by the evidence of appellant and J. B. Clark, are in substance as follows:

Scrap iron was being loaded on a trailer by appellant, Menendez, Clark and Mullins, to be carried to the dump. The scrap iron consisted of heavy sheets of iron from an engine tender which had been dismantled. The trailer on which it was being loaded and carried was about eight feet long and four feet wide and attached to a tractor. Heavy iron standards had been set up along the sides of the trailer to hold the load in place and extended out from the sides of the trailer after it was loaded. Appellant and the other workmen loaded the trailer under the supervision of Hunt, who is designated as the "gang boiler foreman." After the last piece of material had been placed on top of the trailer, the load was about six and a half or seven feet high. The top piece of scrap was a deck siding of an old engine tender to which a cast step was bolted. The foreman, Hunt, wanting to save the step, directed Menendez to climb on top of the load and burn the step off with an acetylene cutter or torch and in obedience to this order Menendez climbed to the top of the load and began burning the

bolts which held the step. While this was being done Hunt stood at the side of the trailer and back far enough to see the bolts as they were being burned off. About the time the bolts were burned off and the step detached, apparently, it was about to fall and Hunt told appellant to catch the step. Appellant then walked under pieces of scrap iron which extended out from the top of the trailer, reached upward and caught the step and while holding it the melted iron from the bolts poured off the top of the step into his eye. Plaintiff described the work and the circumstances under which he was injured as follows:

"Q. Where was Mr. Menendez at the time he carried out this order in burning the step off? A. He was up on top of this scrap, he could not have burned the bolts off otherwise.

"Q. What kind of tool did he have to do that work with? A. He had a cutting torch, an acetylene torch, sometimes they call them 'cutting torch.'

"Q. Tell the jury where Edward P. Hunt was while Mr. Menendez was upon top of this scrap burning this step off? A. He was standing back of us.

"Q. How far was Mr. Hunt from the trailer while Menendez was up there burning this step off? A. Just a step or two behind me, probably six feet.

"Q. Who else was standing there at that time? A. J. B. Clark and Carl Mullins.

"Q. What happened, if anything, in the course of that operation while Menendez was up there burning this step off with this torch? A. Mr. Hunt told me to catch that step.

"Q. Who told you to do that? A. Edward P. Hunt, the foreman.

"Q. Where did you go and in what position did you place your body in order to do the work he told you to do? A. I was practically under this material that stuck out over the back end of the trailer, and I had to step a couple of steps forward and reach up and then I could just reach the bottom of the step.

"Q. Say what you did with reference to this step? A. I reached up, as I was told to do, and

caught the step and was holding the bottom of the step, and as he burned the bolts off that forced me to be right under the step. The step was so long—

"Q. How long? A. I suppose the part where the bolts were was this high (indicating) and it stuck out at the bottom some eight or ten inches or more; the bottom part was sticking out this way (indicating) and I reached up and caught hold of the bottom part of the step and during the burning of the bolts melted stuff, melted iron came off the top of this step about the time the step gave away. This melted iron poured off the top and down on top of my goggles and went into my eye."

J. B. Clark, one of the workmen who was present at the time of the accident, testified that after Menendez had burned one bolt off the foreman told appellant to catch the step and not to let it fall. When Wallis caught the step he, Clark, saw him drop it quickly and grab his eye. He further said that appellant was ordered by the foreman to go under the step and the acetylene torch which Menendez was pointing downward against the bolts. He was asked and answered as follows:

"Q. Where was Wallis standing at the time Menendez went up on top of this scrap and began using this torch? A. He had pulled the hose and the torch over there and had handed Menendez the torch and stepped back to the rear where this scrap was sticking out behind.

"Q. On the right hand side? A. Yes sir.

"Q. Tell the jury what happened after that, what did Hunt do and what did Wallis do? A. Mr. Menendez got up on top of this scrap and went to burning off the bolts in this step, and he had burned one bolt and Mr. Hunt told Mr. Wallis to catch the step and don't let it fall.

"Q. What did Wallis do? A. He caught the step.

"Q. Then what did you observe? A. When he caught the step I noticed him drop it right quick and grab his eye * * *."

The evidence of the witnesses for appellee tends to contradict the evidence of appellant and his witness,

Clark, with reference to what took place at the time and immediately following the accident. According to their evidence it is doubtful that the injury to appellant's eye was result of any burn he received at the time if he was so burned. But we are not concerned with the conflict of evidence, which of course, was a province of the jury. In determining whether or not a peremptory instruction should be given in a case, the evidence of the plaintiff, or the party against whom the instruction is given, must be accepted as true, since the jury has the right to believe either set of witnesses it sees fit. Hence, the question is, accepting as true the evidence of appellant, and his witness Clark, does the case come within the doctrine of assumed risk?

The first argument of counsel for appellant is that disregarding the fact that appellant was ordered by his foreman to work in a place of danger, the doctrine of assumed risk is not applicable in this case, since the evidence discloses that neither appellant nor his employer contemplated that he, appellant, would be required, in the ordinary prosecution of his work as a helper, to stand in and under fire emanating from an acetylene torch. In view of appellant's own testimony, we are not prepared to accept the theory that the doctrine of assumption of risk is not applicable because of the mere fact that appellant was ordered to work in and about an acetylene torch, since it is shown by his own testimony that he had had a number of years experience in and about this class of work and at the particular time his employment and duties were that of helper to a boilermaker, Menendez, who did use an acetylene torch and that it was the duty of the helper to assist the boilermaker in doing the work he was required to do. However, appellant testified and so did Menendez, that appellant was not required to nor did he actually use an acetylene torch. But it is apparent from the evidence that appellant's experience and observation of the operation of an acetylene torch he knew that sparks of fire frequently emanated from such torches and that anyone within the range of the sparks might be burned by them.

Had appellant's alleged injury resulted from a burn by a spark of fire emanating from the acetylene torch, we think the rule of assumption of risk would be applicable; but such is not the case. Since the nature of appellant's work which he was employed to do required

him to assist the boilermaker to whom he was helper, which work occasionally included the use of an acctylene torch by the boilermaker, he, appellant, was charged with knowledge that he might receive burns from sparks emanating from the torch. But this does not mean necessarily that when appellant was ordered by the foreman to go under the falling step, or which was about to fall, and catch it, he then assumed the risk of being injured from melted metal or otherwise, except he might be burned by a spark of fire emanating from the torch. It is thus seen that appellant's injury resulted not from a cause ordinarily expected to result from or incident to the work he was employed to do, but from a cause unusual and which could not reasonably have been anticipated or foreseen by the appellant. It is argued that the foreman, Hunt, could not reasonably have anticipated or expected appellant to be burned by the melted iron when he ordered him to catch the step. But the foreman being mistaken in his judgment does not absolve him from liability if the task ordered to be performed, and the place in which appellant was ordered to place himself, were unsafe, or a place of danger, unless the danger was so obvious that an ordinarily prudent person would not have assumed the risk or obeyed the orders of the foreman.

If there had been different methods of performing the particular task appellant was ordered to do—a safe one and an unsafe one—and appellant had voluntarily adopted an obviously unsafe method, a different question might be presented. But it appears to us that appellant had no alternative of methods and adopted the only one available, viz., that of going under the step and catching it with his hand.

In Nashville, C., & St. L. Railway Company v. Cleaver, 274 Ky. 410, 118 S. W. (2d) 748, the court said [page 750]:

"Whether that or any other extraordinary risk in a given case would have been assumed by the ordinarily prudent person is a question of fact to be determined by the jury unless the court is of the opinion that the circumstances made it so manifest, one way or the other, that reasonable minds could not differ, in which event the determination is one of law for the court. [Citing cases.]

"There comes into use in reaching a decision in

this case two correlated rules which in a degree qualify the general principle of assumption of risk, thus stated, in its relation to perceiving a risk of injury and appreciating its danger. Perhaps to speak more precisely it should be said that one rule lessens the responsibility of the servant and increases that of the master, and the other lessens the responsibility of the master and increases that of the servant.

"The first of these rules is generally, that when a workman acts under the command or threat of his employer (or, as here, a vice principal), he does not assume the risk incident to the act to be done or being done unless he certainly knows and appreciates the danger, or it is so obvious or imminent that an ordinarily prudent man would not be willing to encounter it even under orders of one in authority over him; and usually this is a question for the jury. Louisville & Nashville Railroad Company v. Williams' Adm'r, 175 Ky. 679, 194 S. W. 920; Day's Adm'x v. South Covington & C. St. Railway Company, 185 Ky. 766, 768, 215 S. W. 944; Louisville & Nashville Railroad Company v. Davis, 199 Ky. 275, 250 S. W. 978. But if under those circumstances—where there is a direction or command—the peril is not so obvious, or it may be said that the means of knowledge of danger are equal, or that the acceptance of the risk is a matter of exercising judgment or discretion, then the workman may yield up his own opinion and rely upon his employer's presumed superior knowledge of the situation and probable consequences. It is an implied assurance of safety. If under such circumstances he proceeds with the task, performing it by the usual method, and is injured, he may recover damages of the employer if negligence appears, because having yielded up his own judgment to that of the master he is not chargeable with having assumed the risk, for it has been entirely assumed by the master. Risks incurred under coercion are not assumed. [Citing cases.]"

In discussing the question of assumed risk incurred by a servant under command by the master to perform a particular task, the rule is thus stated in the case of Chicago, R. I. & Railway Company v. McCarty, 49 Neb. 475, 68 N. W. 633, 634:

"**Our** conclusion after a consideration of the subject is that it is a harsh and unreasonable rule which charges a servant, when commanded to perform an act by his master, with the duty of at once determining whether or not the act can be safely performed, and then performing it at his peril, or refusing to perform it at the expense of losing his employment. The risk incurred by obeying a negligent command of the master is not one ordinarily incident to the servant's employment, and is not an assumed risk, because negligence on the part of the master is not presumed to be a feature of the employment. * * * With the case however, of a command given suddenly which must be obeyed immediately or not at all, a different question is presented. The servant is confronted with a new danger, one not contemplated when he entered the employment, and one not made part of it by continued use. The servant has certainly in the first place the right to presume that the master gave the command advisedly, and in the exercise of due care. If the servant disobey, he forfeits his employment. * * * In many cases a man of ordinary prudence, compelled to decide instantly, even though aware of the existence of danger, would prefer obedience, and would take the risk."

In Siler v. Payne, 194 Ky. 618, 240 S. W. 353, this court said [page 354]:

"The general rule of assumed risk previously mentioned is subject to the qualification that, if the servant acted under the direct orders of his superior or on his assurance of safety, the servant will not be held to assume the risk, unless the danger was so obvious that no ordinarily prudent person would have undertaken the work under the circumstances. Cincinnati N. O. & T. P. Railway Company v. Estes, 189 Ky. 54, 224 S. W. 503, and authorities there cited. In such cases the servant has the right to rely on the superior knowledge of the master and the assurance of safety need not be expressed but may be implied from a direct order given after objection has been made on the ground that the place is unsafe."

See, also, City of Owensboro v. Gabbert, 135 Ky. 346, 122 S. W. 178, 135 Am. St. Rep. 462, 21 Ann. Cas.

705; Louisville & Nashville Railroad Company v. Davis, 199 Ky. 275, 250 S. W. 978.

In Roy v. Louisville Gas & Electric Company, **181 Ky.** 25, 203 S. W. 855, the court said [page 856]:

> "The peremptory appears to have been given because plaintiff himself stated that he realized the danger. Ordinarily, of course, this fact would be sufficient to defeat a recovery, for the servant assumes the risk where he knows and appreciates the danger, or the danger is so obvious that an ordinarily prudent person in his situation would have known and appreciated it. Chesapeake & O. Railway Company v. De Atley, 159 Ky. 687, 167 S. W. 933; Stearns Coal & Lumber Company v. Calhoun, 166 Ky. 607, 179 S. W. 590. But this rule is subject to the qualification that, where the master or his representative is present and gives the servant a direct command to proceed with the work, the servant, though aware of the danger, does not assume the risk, unless the danger is so obvious and imminent that an ordinarily prudent person in his situation would have refused to encounter it, and ordinarily this is a question for the jury. Stewart Dry Goods Company v. Boone, 175 Ky. 271, 194 S. W. 103 [105]; Yellow Poplar Lumber Company v. Bartley, 164 Ky. 763, 176 S. W. 201."

In the case at bar appellant was suddenly ordered tō perform a task attendant with more or less danger and, if it be conceded that he was aware of the danger, we do not think that the danger was so patent and obvious that an ordinarily prudent person would have refused to obey the command of his master, even to the extent of taking the risk of losing his employment.

Many other authorities similar to those supra might be cited, but we deem it unnecessary to further extend this opinion by further citation of cumulative authorities. It is sufficient to say that it is our conclusion that the case at bar comes within the rules announced in the authorities supra, and that the court erred in peremptorily instructing the jury to find a verdict for the defendants.

The judgment is reversed and remanded with directions to grant appellant a new trial, and for proceedings consistent with this opinion.